On Rehearing
HAMITER, Justice.
The primary question to be determined in these consolidated cases is whether Section 15.1, Article 14 of the Louisiana Constitution (an amendment adopted November 4, 1952 and consisting of 39 paragraphs, the provisions of which are substantially the same as those of LSA-R.S. 33:247l-2508) grants authority and power to the Shreveport Municipal Fire and Police Civil Service Board to hold the public hearings that it proposes and which plaintiffs seek to enjoin.
With respect to the proposed public hearings the admitted' allegations of the petitions and a written stipulation of counsel, on which the cases were tried, disclose the factual situation hereinafter set forth.
Plaintiffs, Oliver and Bussie, were and are members of the Shreveport Fire Department and governed by the classified civil service provisions of the Municipal Fire and Police Civil Service Law of Louisiana, now contained in the above-mentioned constitutional amendment. Neither had been disciplined by his appointing authority; such authority had never filed a complaint against either; and no written request for investigating or disciplining them had been made by any elector. The public hearings proposed to be held, and. involving these employees, were instigated by the civil service board on its own motion.
On December 4, 1953 the defendant board addressed identical letters to the two plaintiffs, as well as to two other persons who were members of the Shreveport Police Department, notifying them *1086 that it intended to publicly investigate their conduct during a period of about seven years to determine “to what extent, if any,” they had participated in a conspiracy the purpose of which was to coerce a designated public official into taking or failing to take action in connection with his public duties, and “to what extent, if any,” they succeeded in so coercing the said official. Plaintiffs were informed that they would be given the opportunity at such hearings to cross-examine witnesses produced by the board and to present testimony for the purpose of refuting any evidence which reflects on their conduct. The letter closed with the notification: “Should the Board decide to investigate any other phases of your conduct and performance, you will be given further notice.”
The four investigations, according to the stipulation, were to be conducted separately ; not more than a week would elapse between the close of one and the beginning of the next; and each of the employees would be subpoenaed by the board and required to answer all questions dealing with the subject matter, unless he refused to answer on the grounds of self-incrimination. Other witnesses would be called and the employees would be allowed to cross-examine them and to present any testimony or evidence on thei'r own behalf.
It appears from the stipulated testimony of an agent for the board (a specially appointed attorney who subsequently represented and still represents the board in these proceedings), that he had been authorized and directed to make, and that he did make and complete, a private mvestigation of plaintiffs’ conduct for the board; and that it was at the completion of this private investigation that the board proceeded to initiate the public hearings sought to be enjoined.
The stipulation of counsel further discloses that the proposed hearings would be held in the council chambers of the Shreveport City Hall and open to the public with “the testimony of all witnesses being available to the press and radio announcers; that the hearings almost certainly will last several days and that there would be an opportunity for the press and radio announcers to play up the subject matter for a number of days.”
“There is a great deal of public interest in the proposed investigations and the local newspapers and radio stations plan to give extensive publicity to the investigations if held.”'
“The said Board does not propose to be bound by the legal rules of evidence. Further, the Board proposes to hear all evidence which it deems to be relevant to the announced subject matters or such additional subject matters as may be later announced, without regard for whether or not such evidence involves criminal activities.”
“The said Board, in connection with the proposed investigations, proposes to use *1088 its power of subpoena against your plaintiffs under the Civil Service Law. If the testimony indicates criminal activity on the part of any plaintiff, such testimony will be adduced in public with newspaper reporters present or plaintiff or plaintiffs will be forced to rely on the constitutional and civil service provisions against self-incrimination, in public, with newspaper reporters present.”
“At the present moment the Caddo Parish Grand Jury is in session. If the proposed investigations are held prior to the completion of deliberations by the Caddo Parish Grand Jury, the transcript of testimony of the investigations will be available to said Grand Jury and, if the investigations disclose illegal or criminal activities, the Chairman of the Board will send a copy of the transcript to the said Grand Jury.”
“If, as a 'result of the proposed investigation, in the opinion of the Board, corrective or disciplinary action is indicated, then in that event, the Board will be advised by its attorney, Mr. John A. Dykes, that it has the authority to order disciplinary or corrective action to be taken, and if such corrective or disciplinary action is taken, as to any plaintiff or plaintiffs against whom it is taken, the investigation will have been a trial.”
“If disciplinary action is taken against any of the plaintiffs as a result of the said investigations, before said plaintiff could- resort to court action, the said plaintiff would have to appeal his case to the identical board that ordered such disciplinary or corrective action to be taken and judicial review would be limited to consideration of whether the action was taken in good faith for cause.”
“Upon the trial of this case [these cases], plaintiffs would call as witnesses a number of Civil Service employees who would testify that a public investigation as proposed herein would adversely reflect upon them as individuals and as Civil' Service employees, irrespective of their guilt or innocence and irrespective of whether or not corrective or disciplinary action was or was not taken against them.” (Brackets ours.)
These plaintiffs do not dispute the authority of the board to make whatever private investigations it deems necessary and to order the appointing authority to take corrective or disciplinary action. But they do challenge the board’s claimed right to hold the proposed public hearings or trials, they insisting that the Civil Service Law contains no provision granting such power. If it does, they contend alternatively, it violates the due process clause of the federal constitution.
The district court, after trial of the merits, rendered judgment in favor of each plaintiff “permanently enjoining and restraining the said Shreveport Municipal Fire and Police Civil Service Board of the City of Shreveport, Louisiana, from holding a public ‘investigation’ of either plaintiff’s conduct pursuant to defendant’s *1090 letter addressed to each plaintiff under date of December 4, 1953. Said injunction is granted without prejudice to the right of defendant to conduct and hold a public trial of any specific complaint or complaints made or which may be made against either or all of said plaintiffs.” (This reservation evidently has reference to complaints regarding political activities prohibited by paragraph 34 of the constitutional Civil Service Law.)
In reversing those judgments on appeal, and dismissing the suits, the Court of Appeal concluded that specific authority for the board’s holding the proposed public hearings is granted in paragraph 31 of Section 15.1, Article 14 of the Louisiana Constitution. 72 So.2d 526, 529. That paragraph is entitled “Appeals by Employees to the Board.” And it recites in part: “Any regular employee in the classified service who feels that he has been discharged or subject to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand in writing, a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request.
“All such hearings and investigations conducted by the board pursuant to the provisions of this Section shall be opened to the public. No hearing and investigation shall be held unless both the employee and the appointing authority have been advised at least ten days in advance of the date, time and place therefor. * * * ”
Clearly paragraph 31, as the title and the other langauge thereof plainly reveal, contemplates a public hearing held only in connection with an appeal to the board by a “regular employee in the classified service who feels that he has been discharged or subject to any corrective or disciplinary action without just cause.” These circumstances are not applicable to the instant plaintiffs. (Italics ours.)
The appearance of the word “section” in the last quoted provision of paragraph 31 is obviously an error. The word “paragraph”, no doubt, was intended. As contained in the Constitution the Civil Service Law comprises one lengthy “section” and is divided into 39 paragraphs; whereas the law in the Revised Statutes of 1950, from which it was taken practically verbatim, consisted of a single part divided into numerous sections. Section 2501 of Title 33, LSA-R.S. provided for public hearings on employees’ appeals to the board, and when it was carried into the Constitution the word “section” as therein used was not changed to read “paragraph”, as should have been done.
Able defense counsel does not contend, as the Court of Appeal concluded, that the discussed paragraph 31 authorizes the instant proposed public hearings.' *1092 Conceding that the board possesses only such powers as are conferred by the Civil Service Law its counsel, to quote from his brief, states: “It is defendant’s contention that the authority to conduct the proposed investigations can be supported by the unambiguous language of either the provisions of paragraphs 7d, 7e or paragraph 30c.”
The provisions thus relied on read as-follows:
“7. Duties of the Board
$ * * * * *
“d. Make-, at the direction of the mayor, commissioner of public safety, chief of either the fire or police department, or upon the written petition of any citizen for just cause, or upon its own motion, any investigation concerning the administration of personnel or the compliance with the provisions of this Section in the said municipal fire and police services; review, and modify or set aside upon its own motion, any of its actions, take any other action which it determines to be desirable or necessary in the public interest, or to carry out effectively the provisions and purposes of this Section.
“e. Conduct investigations and pass upon complaints by or against any officer or employee in the classified service for the purpose of demotion, reduction in position or abolition thereof, suspension of [or] dismissal of the officer or employee, in accordance with the provisions of this Section.
* * * * * *
“30. Corrective and Disciplinary Action for Maintaining Standards of Service * * * * * *
“c. Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, the board may, and shall upon the written request of any qualified elector of the state which sets out the reasons therefor, make an investigation of the conduct and performance of any employee in the classified service and, thereupon may render such judgment and order action to be taken by the appointing authority. Such action shall be forthwith taken by the appointing authority.”
Significantly, not one of the quoted and relied on provisions uses the term “public investigation” or “public hearing” as do paragraphs 31 and 34. Paragraph 31, as pointed out above, relates to a situation whereby an employee has been disciplined by an appointing authority for some alleged misconduct, described in paragraph 30 and inimical to a high standard of service, and he appeals to the board (after it and the employee have been furnished, in accordance with paragraph 30, subpar. d, a statement in writing of the appointing authority’s action and the complete reasons therefor), with the view and purpose of presenting evidence at a public hearing to show that the action was not taken in good faith for cause. Under paragraph 34 the board, within thirty days after receiving written charges respecting *1094 an employee’s engaging in certain specified and prohibited political activities, is required to hold “a public hearing and investigation and determine whether such charges are true and correct.” In each of those instances, it is to be noted, the law contemplates a filing with the board of specific written charges against the employee; and, if and when such charges are so filed, it accords him the right to a public hearing in order to obtain redress if he can, including a clearing of his name from the resulting stigma. And the action of the board following the public hearing, if it rules against the employee, is conclusive except for a review by the courts.
On the other hand the provisions relied on by the defendant board (as granting authority for the proposed hearings sought to be enjoined herein) neither provide for public hearings or public investigations nor require specific written charges as a basis for the action to be taken thereunder; they make reference simply to the board’s conducting or making investigations. And this, in the light of what has been stated above, indicates that only private investigations are contemplated by such provisions.
To hold otherwise would seem to make for an anomalous situation — one clearly not intended by the framers of the constitutional amendment. Thus, paragraph 30, subpar. c (relied on by defendant) gives to the board the right to order disciplinary action at the conclusion of an investigation and make the imposition of the recommended action mandatory upon the appointing authority. And paragraph 31 provides that the appeal from' such disciplinary action shall first be to the Civil Service Board and thereafter to the district court. Now if at a public hearing held initially the board finds an employee guilty of misconduct and requires the appointing authority to take disciplinary action, such employee (before he can obtain a judicial review) must appeal such action to the same board; and it must then hold another and an identical public hearing, on the same evidence previously considered, and there “review” its own former ruling. That such a procedure would be grossly impractical and unreasonable is admitted by defense counsel. To quote from his brief, he states: “ * * * It is conceded by counsel for defendant that the prescribed procedure is cumbersome, unreasonable and does violence to our concept of justice and judicial procedure. It seems equally obvious that the responsibility for curing these objectionable features is legislative unless they do violence to the provisions of the state or federal constitution. * * * ”
• The last sentence of paragraph 6, subpar. m of the constitutional Civil Service Law, which states that “Meetings of the boards shall be open to the public”, does not militate against an interpretation that paragraphs 7, subpars. d, e and 30, subpar. c (all relied on by defendant) contemplate only private investigations. The *1096 framers of the law could not have intended that the quoted sentence was to be applicable to all of the activities of the board, particularly since they made specific reference in later provisions to “investigations”, “public investigations” and “public hearings”. If such had been their intention very likely the sentence would have recited that “all meetings, investigations and hearings shall be open to the public”, and the specific references to public hearings found in paragraphs 31 and 34 would have been omitted.
Again, paragraph 32 plainly indicates that the framers intended that the board might function with respect to some activities in a manner other than by way of public meetings. It provides in part: “The board, and each of its members, shall have the same power and authority to administer oaths, subpoena witnesses, and compel the production of books and papers pertinent to any investigation or hearing authorized by this Section as is possessed by the district courts of Louisiana. * * *
“Any officer or employee in the classified service who wilfully refuses or fails to appear before any court, officer, board, body or person properly authorized to conduct any hearing or inquiry, * * * shall, in addition to any other penalty to which he may be subject, forfeit his position, and shall not be eligible for appointment to any position in the classified service for a period of six years.” (Italics ours.)
This paragraph seems to completely refute the suggestion that the board can conduct an investigation only as a body and when convened in a public meeting, for it expressly requires employees and other persons to appear before any officer or other persons properly authorized to conduct any inquiry; and it grants to the individual members of the board the power to administer oaths, subpoena witnesses and compel the production of books and papers. Pertinent here and worthy of notice, incidentally, is the admitted fact (referred to above) that a private investigation of the conduct of these plaintiffs was made for the board by a specially appointed attorney prior to its notification to them of the proposal to hold the public hearings in question. In part the stipulated testimony of such attorney is: “* * * Subject to the Board’s obtaining authority from the City Council for such employment, I agreed to being retained by the Board and to assist it in the preparation and conduct of the proposed investigations. In such capacity, I was authorized and directed to gather information for presentation at these investigations. * * 5fS ‡ J{C Jfi ’ ‡
“After being informed of the approval of my employment by the City Council, I proceeded to undertake to gather information with respect to possible prohibited activities by members of the classified service, including persons other than plaintiffs herein. My activities included interviewing persons who allegedly had *1098 knowledge of violations of the Civil Service Law by members of the Police and Fire Departments. Some of these interviews were arranged on my own initiative, some of them were held after being furnished by other persons with the names of the parties to be interviewed, and some of the persons whom I interviewed contacted me voluntarily. * * * ”
Moreover, a requirement that all investigations of the Board be publicly held, as in open meetings, would seem to be unsound in principle. Unquestionably, it would clearly hamper such body in carrying on the meritorious service for which it was designed and created. Also, undoubtedly, many innocent employees would be unjustly and irreparably harmed by and through publicly held investigations predicated on mere suspicions.
Therefore, our conclusion is that defendant is without authority to hold the proposed public investigations of these plaintiffs and that the district judge correctly ordered the issuance of a permanent injunction in favor of each of them.
For the reasons assigned the judgments of the Court of Appeal are reversed and set aside and those of the district court are reinstated and made the decrees of this court. The right to apply for a rehearing is reserved to the defendant.
HAWTHORNE, J., dissents, adhering to the views expressed in the original opinion.