The Triangle Oil Company, a commercial partnership, brought suit against the City of New Orleans to recover, by way of refund, the sum of $1,927.23, representing kerosene taxes paid to the City, through the Standard Oil Company of Louisiana, under a municipal ordinance assessing said tax which was subsequently declared unconstitutional.
The answer of the City of New Orleans admits that the sum of $1,927.23 was paid in taxes by the Standard Oil Company, but sets forth that plaintiff company passed on and collected the tax from its customers, and, hence, is not entitled to restitution. As an additional defense, the City pleaded that plaintiff, by its laches in failing to promptly institute suit, prior to which the funds had been expended in due course of governmental functions, is barred from claiming the relief sought, if any such claim existed.
From an adverse judgment, the plaintiff has appealed.
There can be no dispute over the fact that the City of New Orleans, from July 28, 1935, through December 31, 1935, assessed and collected from plaintiff, through the Standard Oil Company of Louisiana, plaintiff's oil vendor, kerosene taxes levied under the authority of City Ordinance No. 14,241 C.C.S., in the sum of $1,927.23, the amount sued for. The legality and constitutionality of the aforesaid kerosene tax ordinance was attacked in a suit instituted against the City by a large number of oil dealers, including plaintiff, doing business within the City. While this suit was in the process of being heard and determined by the courts, the City continued to collect the tax imposed by authority of said ordinance, including the amount here involved. On February 3, 1936, the Supreme Court declared said ordinance unconstitutional and, on March 30, 1936, denied a rehearing. See Weixel Janssen, Inc., v. City of New Orleans,184 La. 651, 167 So. 179.
The verity of plaintiff's demand rests upon the illegal exaction by the City of a tax levied and collected by it under and by virtue of an illegal and unconstitutional tax ordinance.
It is well recognized that laws regulating the collection of taxes or licenses are sui generis and constitute a system to which the general provisions of our Civil Code have little, if any, application. Hence, from this flows the earlier announced general rule that suits could not be maintained to recover taxes voluntarily paid under an applicable, but innocuous ordinance, and subsequently disbursed in the orderly administration of municipal affairs, in the absence of a special declaratory statute authorizing such recovery. City of New Orleans v. Jackson Brewing Company, 162 La. 121, 110 So. 110, and authorities therein referred to.
In pursuance of a constitutional mandate (Article X, Section 18, of the Constitution of 1921) commanding, among other purposes, the adoption of laws to provide for "a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him", the Legislature adopted Act No. 16 of the Second Extraordinary Session of 1934, and, later, Act No. 23 of the Second Extraordinary Session of 1935, amending the former statute. The pertinent parts of the latter act provide as follows:
"Section 2. Any taxpayer who has paid any tax, the whole or any part of which has been declared illegal by any court of competent jurisdiction, shall be reimbursed for the amount of the tax so declared to be illegal, as follows:
* * * * *
"5. The taxpayer shall have the right to institute suit in the district court at the domicile of the tax collector, or in the parish where the tax was assessed, for the recovery of any portion of the tax paid by him and which has been declared illegal. Any final judgment rendered under this paragraph shall be paid in the following manner:
* * * * *
"(b) A certified copy of any final judgment against any tax collector of any parish, municipality or taxing district of the State, or against any such parish, municipality or taxing district, shall be furnished *Page 561 
by the tax debtor to the governing authority of such parish, municipality or taxing district, and shall be included in their next forth-coming budget and paid in the manner provided by law; * * *".
It is manifest that defendant's reliance upon the prior existing general rule must be held to be unwarranted in view of the prevailing specific statutory authority quoted above, and upon which plaintiff's suit is founded.
Defendant's next contention, that plaintiff is not entitled to a recovery of the tax levied by the City for the reason that it had passed it on to and collected it from its customers, is not supported by the slightest proof. Having shown payment of a tax levied under an unconstitutional ordinance and its admitted collection by the City, plaintiff has made out a prima facie case, and, consequently, the City bears the burden of proving the special defense urged. We are convinced that this obligation of the defendant has not been discharged. The City has offered no evidence of any nature, save that of a negative character, to support its contention. It depends solely upon the testimony of the members of plaintiff company, from which, we conclude, defendant can obtain little consolation. It was a matter of common knowledge that the Parishes of Jefferson and St. Bernard, adjoining the City of New Orleans, has not imposed the one cent kerosene tax which the defendant had here levied. As a consequence, oil dealers of the named parishes sold and delivered tax-free kerosene within the city limits at their pleasure. To meet this competition and to avoid loss of trade and ultimate disaster, plaintiff and the other oil dealers in New Orleans found it necessary to sell and deliver to their established trade tax-burdened kerosene at a figure which did not include the amount of the tax imposed. This is testified to by the members of the plaintiff partnership, and no evidence to the contrary appears in the record. It was the aforementioned prevailing competitive market which precipitated the litigation that resulted in the nullity of the ordinance imposing the tax.
The remaining and, evidently, the City's main defense, is that of plaintiff's alleged laches as a bar to recovery, coupled with the averment that the funds realized from the tax had been disbursed in orderly pursuit of governmental functions long prior to formal demand and suit.
In Corpus Juris, Vol. 21, Section 211, at page 210, is found the following:
"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; * * *; such delay in enforcing one's rights as works disadvantage to another."
In constituting a defense, the doctrine of lack of vigilance is based on, and in part resides in, the injury which might be occasioned, the injustice that might result from the enforcement of long neglected rights, the difficulty and in many instances the impossibility, of ascertaining the truth of matters in controversy and doing justice between the parties, and in part on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands. It is equally well recognized, however, that the doctrine cannot be invoked to defeat justice and will be applied only where the enforcement of the right asserted would work injustice.
There is no absolute rule as to what constitutes laches or staleness of demand, and each case must rest upon its own peculiar circumstances. It must be conceded that laches is not, like fixed periods of prescription, a mere matter of time. It resolves itself, rather, into principally a question of the inequity of permitting the claim to be enforced, an inequity which takes into consideration some intermediate change in conditions. Corpus Juris, Vol. 21, Section 218, page 219.
With these principles in mind, let us see what the record reflects. It is shown that on May 12, 1936, following the decreed nullity of the tax ordinance, the Standard Oil Company of Louisiana, through its attorney, Arthur M. Curtis, made a personal demand upon the Commissioner of Finance of the City, for a refund of the taxes paid under said ordinance. Then followed periodical negotiations in which the City, by written communication, on October 1, 1936, requested the Standard Oil Company to furnish it with a statement of the kerosene tax paid and on which the company was entitled to a refund. This statement was furnished on October 5, 1936, and discloses *Page 562 
plaintiff as having paid the Standard Oil Company the tax amount herein sued for. This was in turn paid over to the State Supervisor of Public Accounts, and each month remitted to the City.
Silence of the City was again broken by repeated demands, over the telephone and in person, as the testimony of Mr. Curtis reflects, extending up to February, 1938. He testified that during that time he not only spoke to Mr. Barrett, aid to the Finance Commissioner, at least on ten occasions, but likewise to the City's tax attorney, to the Commissioner of Finance, the auditor, and attorneys in the City Attorney's office. He further testified that on several occasions he was told by City authorities that "the checks were in the mail", he in turn notifying plaintiff of this turn in events. It was not until February, 1938, that the City definitely notified Mr. Curtis that it would not make the refund, assigning, as the reason for its refusal, that the funds had been "collected and spent before Cave (Commissioner of Finance) came into office". It was then that an intermediary was employed to continue the attempted collection, and again without success.
Upon being notified of its failure, plaintiff then received from the Standard Oil Company an assignment of its rights on said refund. Plaintiff likewise persisted in seeking a refund, but met with little recognition. Formal demand was then made on defendant on September 14, 1939, and suit was filed on October 16, 1939.
In the face of such circumstances, we cannot possibly declare this demand stale and the funds irrecoverable for reason of laches, when the record bristles with undiminished, resolute and industrious efforts to seek restitution. There is no evidence of apathy, indifference, waiver or acquiescence on the part of either the Standard Oil Company, acting on behalf of plaintiff, or plaintiff itself. Here was a determined, unyielding effort, carried on in the face of hopeful gestures on the part of the City, even to the extent of declaring that the "checks were in the mail". Such conduct impeaches any presumption of invalidity of the claim, or any presumption that it has been abandoned.
The cases relied upon by counsel for defendant have no application. Numerous as they are, they involve the refusal of our courts to grant mandamus or to entertain the claims of employees, clerks, policemen, school teachers, et cetera, for reinstatement when suits were instituted a year or more after their dismissal. In each of these cases the conduct of the complainant was tantamount to an acquiescence in the previous ruling of the employing authority, and which certainly is not the case here. Furthermore, the "raison d'etre" in these cited cases clearly appears as an avoidance of the payment of two salaries for the same position, with one receiving remuneration over an extended period of time without rendering corresponding services. The recognition of such claims would unquestionably be contrary to public policy. State ex rel. McCabe v. Police Board of City of New Orleans, 107 La. 162, 31 So. 662; Crais v. City of New Orleans, 172 La. 931, 136 So. 7; State ex rel. Koehl v. Sewerage Water Board, 179 La. 117, 153 So. 533; State ex rel. Lutz v. Sewerage Water Board, 179 La. 742, 155 So. 10; State ex rel. Skelly v. Board of Commissioners, Port of New Orleans,159 La. 465, 105 So. 510; Ziemer et al. v. City of New Orleans,195 La. 1054, 197 So. 754; United States ex rel. Arant v. Lane,249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650.
In the case at bar, defendant cannot logically assert that it shall be injured should the tax collected be refunded. It has received funds which it was not legally entitled to retain. It has expended these funds in the orderly administration of its business affairs. It has, as a consequence, become the beneficiary and has without doubt received benefits from the funds thus expended. The contention that these funds have long since been expended and are thus uncollectible is answered by the statute (Act No. 23 of Second Extraordinary Session of 1935) itself. The statute, in simple language, says that any final judgment, granting recovery for illegally paid taxes, shall be furnished to the governing authority of the parish, municipality, et cetera, and "shall be included in their next forth-coming budget and paid in the manner provided by law".
It is manifest that, irrespective of whether the tax funds have been expended or not, all that the law requires is that the tax exacting authority shall, in its next budget, make proper provision for restitution. It contemplates the future, the restitution, by proper provision, of funds to be refunded from the source which has been illegally benefited. This, in the light of the circumstances, works no injustice. *Page 563 
From the above, it is clear that the position of the City has not changed; no equitable intermediate right has intervened. Certainly the City could not plead the impossibility of ascertaining the truth of the matter in controversy, a matter in which it carried on full negotiations for over two years. We readily conclude that whatever delay was indulged in by plaintiff was under reasonable promptings. This delay was fully justified under the particular facts existing and we conclude that plaintiff is entitled to restitution of the funds in the amount sued for.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff, Triangle Oil Company, and against the City of New Orleans, defendant, in the full sum of $1,927.23, with legal interest from September 14, 1939, date of formal demand, until paid. All costs to be borne by defendant.
Reversed.