GLADNEY, Justice.
This appeal presents an action seeking judicial determination of the boundary between the contiguous properties of plaintiffs and defendants. The trial court upon application by plaintiffs caused a survey of the land in controversy to be made and in due course Louis Daigre, Jr., surveyor, filed a plat with procés verbal setting forth his findings. The homologation of the surveyor’s report was opposed by defendants and after trial the court sustained the contentions of defendants holding that an established fence constituted the proper dividing line between the separate ownerships.
In order to better understand the relative positions of the two estates there is attached a reproduction of the plat filed with the surveyor’s report. The letters “A” and “B” were placed thereon by instruction of the *140 court for the purpose of designating the two ends of the fence which the judgment held to be the boundary between the lands of the parties.

*141 Prior to May 18, 1944, and for many years prior thereto, the' defendants, C. C. Grillette and his wife owned a triangular strip of land lying north of the intersection and between U. S. Highway No. 71 and the Campti-Creston Road in the Town of Camp-ti. >On the above date defendants sold to their granddaughter, Mrs. Dorothy Gril-lette Ettredge, a plot of land constituting the apex of the triangle with the following description:
“That certain lot of ground with all improvements and buildings thereon located, situated in the upper end of the Town of Campti in Natchitoches Parish, .Louisiana, in the intersection of the Paved Highway No. 71 and the gravel .road running from Campti tp Crestón and described as beginning in the intersection of the two roads and from this point of beginning run North along the East side of the paved road a distance of 250 feet, thence at right angles across to the west side of the gravel road running from Campti to Crestón, and thence along the "west side of said gravel road to the point of beginning, being the filling, station property lately'known as. Stovall’s Place.”
. After passing through several ownerships appellants acquired the above property by deed dated March 26, 1947. On April IS, and July 21, 1947 Mr. Grillette and Mrs. Grillette, by separate acts sold to ■ Stanley W. Franks, their step-grandson, a lot-immediately north of the property they had previously sold their granddaughter, described as: '
“That certain lot of ground located just above the corporate limits of the Town of Campti in Natchitoches Parish, ’'’Louisiana, lying between the •Campti-Creston Highway and Highway Number 71, just above the Conlay Filling Station property; and described as ■ commencing at the "upper corner of the Conlay Filling Station property (acquired from O’Quinn Walker) on the Campti-Creston Road, and from this point of beginning run on up the road a distance of 54% yards, thence across to Highway Number 71 at" a point 65% yards above the upper corner of tbe Conlay Filling Station property on -that road, íhetícé down that road towards Campti to the corner of "the Conlay Filling Station property,, thence along .the line of this property and filling -station property, over to the Campti-Cres-ton Road and the point of beginning. Acquired by Stanley- W. Franks from C. C. and Lula Grillette.”
Within a short time thereafter, on July 26, 1947, Franks conveyed the identical property so acquired to Doyle E. Conlay, who, in turn, deeded one-half interest therein to Floyd Conlay. The consideration recited was $3,470.
During the trial defendants were permitted over objection by "counsel for plaintiffs to present parol evidence of an agreement between the defendants and Franks and a siinilar understanding between Franks and the Conlays that the ’fence above • referred - -to; would constitute the south boundary of the property retained by the Grilléttes. ■ The ' evidence establishes the fact that the fene-e runs in an east and west direction pássing" between the" Grillette home -and a water well drilled by Franks. Certainly, we can assume Franks had no intention of buying the Grillette home, nor did he-intend to include his grandfather’s house-in the sale'to Conlay. It is further indicated in -the following testimony by Floyd Conlay that the Conlays- in acquiring from Franks did not intend to -purchase north of the well:
“Q. When you bought the half interest your brother had acquired from Stanley Franks, did you have any intention of buying anything north of that, fence? A. Our deed calls only for a deep water well.
“Q. You all specified that in the deed, didn’t you ?' A. It specifies that in the deed today.
“Q.- Did you have any intention of buying Mr. Grillette’s house ? A. We were only expecting the deep, water well.
*142 “Q. If the line went slightly beyond the deep water well, you got, roughly, what you expected to get, didn’t you? A. I couldn’t say about that because his line chained it up.
“Q. You intended to. get property with no improvements on it, didn’t you ? A. The deep water well; That was our transaction with Mr. Franks and not Mr. Grillette.”
The surveyor’s report finds the Grillette house to lie within the property called for in the Conlays’ deeds. Plaintiffs testified, as qualified by the above quoted testimony, that they intended to acquire all the property called for by their deed and they disclaimed knowledge of the fence as the northern boundary to their property. The trial court rejected this testimony and we think rightly so. ■ The record leaves no doubt that both of plaintiffs lived for about five years within a few hundred feet of the Grillette home. They purchased within a few months after the defendants had sold to Franks, paying a very substantial consideration for the small lot purchased from Franks. It is not reasonable to infer from these circumstances they had no knowledge as to the exact location of the new or north line of their holdings.
According to the testimony of C. C. Grillette and Franks, measurements used in the description recited in the two acts in which Grillette was the vendor, were arrived at by Grillette stepping off the distance. Grillette is reflected as a man of little education. The dimensions then were brought to the notary who drew the deed. We can easily conclude such measurements were susceptible of error, but there can hardly be any doubt that all of the parties intended the line between Franks and Gril-lette to be south of the Grillette house.
Counsel for appellants argues tiiat the court a quo erred in admitting the oral testimony upon which its judgment is largely predicated. This court decided to the contrary in Selfe v. Travis, La.App.1947, 29 So.2d 786, 790:
"Lastly, plaintiff contends and argues that parol testimony was inadmissible to prove that which the public records do not disclose. He invokes the provisions of Articles Nos. 2266 and 2276 of the Revised Civil Code, which read as follows:
‘“All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
“ ‘The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.’ ”
* * ■ * * * *
“ ‘Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.’
“Reference to decisions of the courts of this state citing, construing and applying these articles is made.
“The establishment by survey of a boundary line by owners of adjoining lands does not create, destroy nor confer title. Such action is resorted to to definitely determine the limits of pre-existing ownership in such way that each owner may know how far his ownership extends and where his neighbor’s begins.
“The provisions and prohibitions of the quoted articles do not invariably extend to agreements whereby boundary lines are established by mutual agreement of adjoining owners. The facts and circumstances of each case, in a large measure, determine whether the established line is binding upon persons who are not parties to the agreement whereby the line was established. Parol testimony, it is now well settled by jurisprudence of this *143 and other states, is admissible to prove the fact that a survey has been made,the location of the line fixed thereby, and acceptance thereof by the parties thereto and third persons.
“The rule is well expressed in 8 American Jurisprudence, 7797, § 73, as follows:
“ ‘Although there was in the early -cases much doubt as to the validity or legal force of parol agreements and ■submissions to settle disputed boundary lines, it is now a well-settled principal of law that an unascertained or disputed boundary line dividing the •lands of adjoining owners may be permanently and irrevocably established by a parol agreement of the adjoining •owners. It is essential to the validity .and binding effect of such agreement that the boundary line fixed by the agreement be definite, certain, and clearly marked, and that it be made by the adjoining landowners with reference to an uncertain or disputed boundary line between their lands. Such an oral agreement is not in contravention ■of the statute of frauds; and when executed and actual possession is taken •under it, it becomes conclusive against the owners and those claiming under them. It has been said that the efficacy of parol agreements and acts of the parties pursuant thereto conclusively to establish a boundary line rests upon the doctrine of estoppel.’
“In Harper v. Learned, 199 La. 398-417, 6 So.2d 326, 332, the court specifically held: ‘Parol evidence is admissible to prove a visible 'boundary recognized by the parties.’ Blanc v. Duplessis, 13 La. 334, is cited.”
See also: Griffin v. Mahoney, La.App. 1951, 56 So.2d 208, 212, 213, in which opinion Judge Taliaferro, referring to the above •quotation from 8 Am.Jur. page 797, Section 73, commented:
“Of course, the quoted rule primarily applies to the parties to the .agreement and their heirs, but also equally applie's to those holding under them, if the evidence direct and/or circumstantial proves that they had knowledge of the location of the established line, and bought and possessed in keeping therewith.”
The remedy of defendants and recognized by the trial' court rested primarily on the doctrine of estoppel which plea was specially urged in their answer:
“It was mutually understood and agreed between Stanley W. Franks and your defendants that the fence which runs from the edge of Highway 71 across to the edge of the Campti-.Creston Highway was the boundary between their respective properties and the said fence which was standing then and is still standing at this date was fully accepted, and approved by your defendants and their then adjoining owner, Stanley W. Franks, as a boundary fence and line between the properties.
“Defendants show that ’in accordance with this agreement Franks possessed up to and not beyond the fence that is and was standing as a boundary between these properties and that the defendants herein have likewise possessed up to the fence and have continued to so possess since the purchase of the property by Franks and since their agreement with him as to the boundary.
“Defendants further show that when the plaintiffs acquired the adjoining property to their property from Franks that they knew and understood that the fence then and now standing was the northern boundary of the property which the plaintiffs were then purchasing from Franks and that said fence was further the southern boundary of the property owned by defendants. Plaintiffs’ vendor Franks went with plaintiff, Doyle E. Conlay, over the tract of land which he conveyed to him and specifically pointed out that the extent of the property which he was selling and that of which plaintiff *144 was .acquiring’; was. to. -the fence which stood. then and now as the boundary-separating the'¡ properties- in question.
“When defendants sold to Stariléy W. Franks by deed dated April IS, 1947, and by correction' deed dated July 24,, 1947, they were in.possession of their property up to, the fence.then and presently standing on the south. Upon agreement with Franks as to. the fence 'being the boundary between their ■properties no question was ever raised as to "the correctness of the boundary fence or as to the correct boundary between these two tracts of'laind. On July 26th, 1947 plaintiffs' acquired the property adjoining defendants- from Franks and moré than- S years have elapsed 'since that date hnd, until just shortly prior to the filing of this suit,no demand was ever made on defendants for the fixing of 'a boundary or for possession of any property which" defendants have enclosed by fence and it is shown that during this period of 5 years the plaintiffs have accepted the present.fence.as the boundary between the properties,' have exercised and sought .to-exercise no possession north, of. the fence and are therefore: equitably-estopped. from raising the question of boundary.at this time'-since they.accepted and knew,that the present,fence is the boundary between the property purchased by them from Franks .and that owned by the defendants herein.”
 The record, in our opinion; conclusively establishes the facts essential 'to the validity of the plea. ’’
After the rendition of judgment below, C. C. Grillette died and his heirs have been properly substituted parties defendant.
Appellees have answered the appeal and urged that the judgment from which appealed should not have.cast the defendants for one-half of the costs, if they should prevail in this court. We.are in accord with this view.
Believing the judgment from which appealed is correct except, to.require modification as to the parties named defendants, and with respect to the assessment of costs it should be amended, and as amended, affirmed.
It is, therefore, ordered adjudged and decreed that there be judgment in favor of Mrs. Bama Grillette Coleman, Ben Gril-lette, Mrs. Dorothy Grillette Éttredge, Denny D. Grillette, Harris Grillette, Mrs. May Grillette -Mahfouz, Mrs. Alma Grillette Cohen, -Mrs. Gladys' Grillette Gongre and Burn- Grillette, defendants, and: against pla-intiffs• Doyle E. -Conlay-and Floyd Con-lay, rejecting their demands, and that the boundary line between, the property of plaintiffs and the property of defendants be and the- same is hereby fixed as the fence line designated, as running from the letter “A” to the letter “B” on the plat of the survey by Louis. J.' Daigre, Jr., which said plat is filed in evidence herein and marked P-9 for • identification and which plat is to be attached hereto, filed here-, with for. recording and made'' a part hereof.- . .
It is further ordered that plaintiffs pay all. costs of this suit, including costs of this appeal.