151 So.2d 557 (1963)
H. A. SHIREY et al., Plaintiffs-Appellants,
v.
Sherwood Dean CAMPBELL, Defendant-Appellee.
No. 9876.
Court of Appeal of Louisiana, Second Circuit.
February 7, 1963.
Rehearing Denied April 1, 1963.
*558 Campbell, Campbell & Marvin, Minden, Jackson & Reynolds, Homer, for H. A. Shirey, Mrs. Pearl Mae Shirey Wells, and *559 Mrs. Ethel Lee Shirey Clower, plaintiffs-appellants.
Shaw & Shaw, Homer, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action wherein plaintiffs, three in number, the children and sole heirs of Mrs. Rosida Shirey Branch, deceased, seek to recover of the defendant, Sherwood Dean Campbell, the grandson and only heir of J. D. Branch, deceased, the value of the one-half of the community estate of their mother in the community of acquets and gains formerly existing between their mother and the said J. D. Branch.
Plaintiffs' mother, Rosida Rainach, was first married to Walter L. Shirey. Plaintiffs are the children of that marriage. After their father's death, in 1911, their mother, on June 28, 1913, married J. D. Branch. There were no children of that marriage. Mrs. Branch died intestate on March 19, 1955, leaving, as her sole and only heirs, petitioners herein. J. D. Branch also died intestate on February 25, 1960, leaving, as his sole and only heir, the defendant herein. Following Mrs. Branch's death, plaintiffs accepted her succession; defendant likewise accepted his grandfather's succession purely, simply, and unconditionally.
Plaintiffs allege that, at the death of their mother, the community estate between her and the said J. D. Branch consisted of deposits in bank accounts aggregating $11,858.56; and of livestock (cattle, horses, and hogs), household goods, and farming equipment to the value of $4,779.00. In addition, plaintiffs contend that the purchase price of a tract of 100 acres of land was paid with community funds, and, hence, there is due plaintiffs, succeeding to their mother's interest in the community estate, the sum of $600.00 representing the one-half of the purchase price of the property. As to this item, however, plaintiffs' demands were later voluntarily dismissed.
To plaintiffs' action, a plea of lis pendens was interposed by the defendant because of the alleged pendency of another action upon the same cause and between the same parties in the Second Judicial District Court for Claiborne Parish. This exception was overruled, after which exceptions of no cause and of no right of action and a plea of laches and estoppel were filed. These exceptions and pleas were referred to the merits. Following trial, defendant filed a plea of res judicata. This plea was overruled, but defendant's plea of laches and estoppel was sustained. From a judgment thus dismissing their suit, plaintiffs appealed. By answer, defendant has brought up for consideration all the aforesaid pleas and exceptions.
This appeal presents primarily for resolution defendant's pleas of laches and estoppel and of res judicata. The plea of lis pendens and exceptions of no cause and of no right of action have apparently been abandoned. At any rate, they are without merit.
First for consideration is the plea of laches and estoppel. This plea is predicated upon the premise that plaintiffs permitted Branch to remain in possession of the estate during his lifetime; that they did not institute suit or take action until after his death; that Branch might have been able to establish there was no justice to plaintiffs' claims, which proof defendant asserts was not available to him because of Branch's death.
Equitable estoppel is the effect of the voluntary conduct of a person whereby he is barred and precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist and the other person rightfully relies and acts upon such belief and will be prejudiced if the former is permitted to *560 deny the existence or the truth of such facts. Public policy and good faith are the bases of the doctrine, the purpose of which is to afford protection against injustice by denying to a person the right to repudiate his acts, admissions, or representations which have been relied upon by the person to whom they were directed and whose conduct they were intended to and did influence.
The doctrine, however, should not be accorded inequitable application. Intent is an essential element of equitable estoppel. Thus, it is essential to equitable estoppel that the matters claimed to create it were intended to lead the other party to act thereon or that there were reasonable grounds to anticipate that he would so act. The doctrine, however, has no application unless the person invoking it relied, and had a right to rely, upon the representation or conduct of the person, or persons, sought to be estoppel. Hence, there is no compliance with this rule requiring reliance upon representations, express or implied, as an element of estoppel where the person pleading the estoppel had actual knowledge or ready or convenient means of acquiring knowledge of the facts concerning which the representations were made. 31 C.J.S. Estoppel §§ 59-71, pp. 236-273.
As defined in Triangle Oil Co. v. City of New Orleans, La.App.Orleans, 1942, 5 So.2d 558, 561,
"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; * * *; such delay in enforcing one's rights as works disadvantage to another."
"In constituting a defense, the doctrine of lack of vigilance is based on, and in part resides in, the injury which might be occasioned, the injustice that might result from the enforcement of long neglected rights, the difficulty and in many instances the impossibility, of ascertaining the truth of matters in controversy and doing justice between the parties, and in part on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands. It is equally well recognized, however, that the doctrine cannot be invoked to defeat justice and will be applied only where the enforcement of the right asserted would work injustice.
"There is no absolute rule as to what constitutes laches or staleness of demand, and each case must rest upon its own peculiar circumstances. It must be conceded that laches is not, like fixed periods of prescription, a mere matter of time. It resolves itself, rather, into principally a question of the inequity of permitting the claim to be enforced, an inequity which takes into consideration some intermediate change in conditions. * * *"
The general rule, however, is that estoppels are not favored. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, and the burden of establishing the facts upon which the plea is predicated, as well as affirmatively showing that the pleader was misled and forced to act to his prejudice, rests upon the party invoking the doctrine. Harvey v. Richard, 200 La. 97, 7 So.2d 674, 677; Hebert v. Champagne, 144 La. 659, 81 So. 217; Thomas v. Blair, 111 La. 678, 35 So. 811; Heirs of Wood v. Nicholls, 33 La.Ann. 744.
In view of the aforesaid principles, a statement of the facts bearing upon the plea of estoppel and laches as established in the record is appropriate. The record discloses, as aforesaid, that, following Mrs. Branch's death, plaintiffs, as her children and heirs, *561 accepted her estate and succession. Discussions of a settlement with the surviving husband were had on several occasions. On one of those occasions, Branch refused to sign a division order permitting plaintiffs to be paid oil or gas royalties from a portion of the community estate. He refused, at all times, to recognize or acknowledge their interests, notwithstanding their insistence on being recognized as the owners of their mother's interest in the community estate. Notwithstanding attempts for an amicable adjustment and settlement, the surviving husband remained adamant and persistent in his position that plaintiffs were without right or interest in the property owned by the community at the time of the wife's death. Obviously influenced by the marriage of their mother, which marriage endured for approximately 43 years, and by the age and temperament of the surviving husband, plaintiffs, out of compassion and consideration for him, as they so testified, elected to let him live in peace and not to enforce a settlement upon him.
The defendant, as the grandson and sole and only heir of the said J. D. Branch, was without doubt familiar with the family relationship, knew the history of his stepgrandmother's former marriage and of the three children, issue of that marriage. His knowledge of their inheritance of her one-half of the community estate is presumed. No contention is made that defendant did not possess such knowledge or that he was without convenient or ready means of acquiring such knowledge. No complaint has been made that, by any action or inaction of plaintiff, defendant was induced to accept his grandfather's succession purely, simply, and unconditionally.
Appropriate to the plea made in the instant case is the observation made by the court in Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604, 608, wherein plaintiffs, former wards of their father as tutor, made claims upon the defendant for the sale price or value of oil produced from their mother's estate, which had previously been paid to their former tutor, who had continued to act in that capacity notwithstanding they had attained the age of majority. The court stated:
"The basis of the estoppel plead in this case is that plaintiffs said nothing, did nothing, were silent, inactive, during all the time defendant was paying to their father that which they now claim was due them. In other words, defendant's plea is that these plaintiffs are estopped by `standing by."
"A discussion at large of the rules applicable to estoppel would subserve no useful purpose here. It suffices to say that there is ample authority to support the general proposition that silence and inaction may, under some circumstances, work an estoppel. This is based upon the theory that, if a man is silent when it is his duty to speak, `equity will debar him from speaking when conscience requires him to be silent'.
"But the rule is subject to qualification. `Mere silence will not work an estoppel. There must be some other element connected with the transaction and the silence to prevent a person from asserting his rights or claim. * * * But to effect an estoppel by silence it must also appear that the person had a full knowledge of the facts and of his rights, that he had an intent to mislead, or at least a willingness that others should be deceived, and that the other party was misled by his attitude." 10 R.C.L., Sec. 21, pp. 692, 693.
"Mere silence of itself will not raise an estoppel. To make the silence of the party operate as an estoppel the circumstances must have been such as to render it his duty to speak, and there must also be an opportunity to speak. And it is essential that he should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have *562 done but for such silence.' * * *" (Emphasis supplied.)
It was further observed that a party setting up an estoppel must have acted in reliance upon the conduct or representations of the parties sought to be estopped, and that, as a general rule, it was essential that he should not only have been destitute of knowledge of the real facts as to the subject matter of the controversy but should have also been without convenient or ready means of acquiring such knowledge. See also: Harvey v. Richard, supra, and the authorities therein cited.
The principle generally recognized was as stated in Lafitte, Dufilho & Co. v. Leon Godchaux, 35 La.Ann. 1161, 1163, wherein the court observed:
"The genius of our law does not favor the claims of those who have long slept on their rights, and who, after years ofinertia; conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement."
The rulings in the following cases were to the same effect: Sun Oil Company v. Roger, 239 La. 379, 118 So.2d 446, 449; Fried v. Bradley, 219 La. 59, 81, 52 So.2d 247, 255.
From the foregoing authorities, it can be concluded that the doctrine of laches, equitable in character, is based on the injustice that might result from the enforcement of stale claims, the difficulty or the impossibility of ascertaining the truth of the matter in controversy, and of doing justice between the parties. Public policy is concerned, for the peace and repose of society, in the purpose and aim of the doctrine to discourage stale and antiquated demands.
What constitutes laches is to be determined in the light of the circumstances of a particular case. The doctrine's application is controlled by equitable considerations; it cannot be invoked to defeat justice; it will be applied only where the enforcement of an asserted right would not work injustice. While delay in forcing a right is an element of laches, such delay does not of itself constitute laches. The defeating of a claim by a mere lapse of time comes within the province of prescription or limitations. Labarre v. Rateau, 210 La. 34, 26 So.2d 279, 285.
In the Labarre case, supra, the court properly stated:

"The laches doctrine addresses itself exclusively to the evidentiary effect of delay. Thus, as stated in section 116b of the above mentioned authority [30 C.J.S. verbo Equity § 116, p. 538]: `Long lapse of time in asserting a claim, when unexplained, operates by way of evidence against the justice of the right asserted, and not only subjects plaintiff's case to severer scrutiny than it would otherwise receive, and exacts of him a higher degree of proof than would otherwise be required, but moves the court to look with more indulgence on the evidence adduced by defendant. Long lapse of time, if unexplained, may create or justify a presumption against the existence or validity of plaintiff's right and in favor of the adverse right of defendant; or a presumption that, if plaintiff was ever possessed of a right, it has been abandoned or waived, or has been in some manner satisfied; or that plaintiff has assented to, or acquiesced in, the adverse right of defendant; or a presumption that the evidence of the transaction in issue has been lost or become obscured, or that conditions have changed since the right accrued; or a presumption that the adverse party would be prejudiced by the enforcement of plaintiff's claim. The presumption of laches arising from lapse of time may be rebutted and overcome by competent testimony.'" *563 See, also: Kuhn v. Bercher, 114 La. 602, 38 So. 468; Wood v. Egan, 39 La.Ann. 684, 2 So. 191; Bodenheimer v. Executors of Bodenheimer, 35 La.Ann. 1005.
Thus, the principle is recognized that, even with reference to stale claims and delayed actions, an unfavorable presumption may be removed or overcome. Whatever presumption may have arisen by the delay in instituting the present action has, in our opinion, been overcome. No one was misled or uninformed as to all pertinent facts pertaining to the estates of Mr. and Mrs. Branch or as to plaintiffs' interests and claims to their mother's community interest therein. There was neither an intent nor an attempt to deceive defendant. On a basis of the facts of this case, and in accordance with the aforesaid principles of law, the plea of estoppel and laches should have been overruled.
Finally for consideration is the matter of the merits of defendant's plea of res judicata. This plea is predicated upon the apparently unfortunate use of the words "with prejudice" in a motion and order of dismissal of a former and identical action between the same parties instituted in the court for Claiborne Parish, the domicile of both Mr. and Mrs. Branch at the time of their deaths and also where their successions were opened. Apparently, the only difference between that action and the one presently before us, instituted in the Twenty-Sixth Judicial District Court for Bossier Parish, at defendant's domicile, is that, in the former action, plaintiffs assert ownership of their mother's alleged community interest in a described 100-acre tract situated in Claiborne Parish, whereas, in the present action, plaintiffs were content with claiming only one-half the purchase price of said land under the theory that the purchase price was paid with community funds. This portion of their demands was, as heretofore observed, voluntarily dismissed.
The facts material to the plea now under consideration may be briefly summarized. To the action instituted in Claiborne Parish defendant excepted to the jurisdiction of the court, inasmuch as he was a resident of and domiciled in Bossier Parish. The court held, on trial of the exception, that it was without jurisdiction as to those portions of plaintiffs' demands relating to the funds and other personal and movable property and effects. The court, nevertheless, retained jurisdiction of the demands so far as they related to the real estate.
Following the aforesaid ruling of the court, plaintiffs instituted the present action in the court for Bossier Parish. There they were met with a plea of lis pendens, notwithstanding the aforesaid action of the court in Claiborne Parish ordering plaintiffs' suit dismissed for lack of jurisdiction as to the funds and other movable effects of the succession. In support of the motion of lis pendens, defendant contended that the action in Claiborne Parish was not final and could still be considered as an action pending inasmuch as an appeal therefrom remained possible. Because of this contention, counsel for plaintiffs presented a formal motion of dismissal to the Second Judicial District Court for Claiborne Parish, which motion and the order signed in connection therewith used the words "with prejudice."
Plaintiffs nevertheless contend that the order of dismissal does not have the effect of a final and definitive judgment in that (1) there was no intention to dismiss said action in a manner to bar and preclude them from prosecuting their claims in the action already filed and pending in Bossier Parish; (2) that their attorney was without power or authority to dismiss their claims and action "with prejudice" and thereby forever relinquish their demands and surrender their claims and property to the defendant; and (3) that the order of dismissal of their demands "with prejudice" was null and void because the court was without jurisdiction to entertain or sign such an order.
While the first two of the aforesaid contentions, if true, point up possible bases *564 for holding, in a proper action, that the court's order was null, some comment upon them should be made. It appears that the purpose of the order of dismissal was merely to show an acquiescence in the ruling of the court that it was without jurisdiction so as to preclude the applicability of the plea of lis pendens filed and urged to their demands as instituted in Bossier Parish. Plaintiffs' intentions not to abandon their claims are evidenced by their continued efforts in prosecuting the action and in proceeding with the trial of the case upon its merits in the Bossier Parish court.
While attorneys are generally authorized, by virtue of their employment, to take any steps in an action in furtherance of their clients' interest, it is difficult to perceive how a dismissal "with prejudice," the effect of which would forever bar and preclude them from urging their demands, could be in their interest. Rather, it would appear that, if attorneys cannot, without special authority, settle or compromise their clients' claims (LSA-C.C. Art. 2997), they could not, by any action, without special authorization, dismiss their clients' suit "with prejudice" and thereby raise a perpetual bar to subsequent actions.
With reference to the third of the aforesaid contentions, we may first point out that the court for Claiborne Parish had no authority, power, or jurisdiction other than to dismiss plaintiffs' action for the lack of jurisdiction. This lack of jurisdiction was urged upon the court by the defendant and sustained. The ruling was acquiesced in by plaintiffs, who, pursuant thereto, thereafter filed a new action in Bossier Parish. Without jurisdiction, the court for Claiborne Parish had no authority or power to pass upon any other feature or phase of the case other than to dismiss the action for lack of jurisdiction. Therefore, it had no authority to give its judgment of dismissal the effect of the thing adjudged, or to accord its judgment the status of finality.
If the court lacked jurisdiction, any judgment rendered by it which could be assumed to be a final determination of the matter, and thus constitute "res judicata," is null and void, and any person having the least interest therein may show such nullity wherever and whenever the judgment is sought to be enforced or given effect. Thus, where a court is without jurisdiction over the subject matter, a judgment rendered relative thereto is absolutely null and has no legal existence. Thus, it was stated in Decuir v. Decuir, 105 La. 481, 29 So. 932, 934:
"* * * If a judgment be an absolute nullity, this nullity may be invoked by any one against whom it is interposed, at any time and anywhere. * * *"
Thus, it was recognized in the Decuir case that judgments rendered, where the courts were without jurisdiction, are absolute nullities and, in fact, that the judgments so rendered never exist as judgments; and that fact may be pronounced by any court having jurisdiction over the then demand, whether it be the tribunal which rendered the void judgments or some other. Therefore, one may plead, in any court, the absolute nullity of any judgment sought to be used against him. Tracy v. Dufrene, 240 La. 232, 121 So.2d 843, 845; Andrews v. Sheehy, 122 La. 464, 47 So. 771; Edwards v. Whited, 29 La.Ann. 647; Alter v. Pickett, 24 La.Ann. 513.
To the same effect is the pronouncement in Key v. Salley, 218 La. 922, 51 So.2d 390, 391, wherein it was stated:
"We only recently pointed out that a judgment rendered by a court without jurisdiction is an absolute nullity and may be attacked at any time, citing authorities to that effect. Buillard v. Davis, 185 La. 255, 169 So. 78."
In the Buillard case, the court stated, in referring to the case of Decuir v. Decuir, 105 La. 481, 29 So. 932, 934,
"We held that if a court `which rendered the judgment and ordered the sale upon which defendants herein rely, *565 was without jurisdiction ratione materiae to entertain the suit, the judgment and the sale predicated upon it are absolute nullities,the judgment never existed as a judgment.'"
Defendant earnestly contends, however, that a voluntary acquiescence by one of the parties litigant in a judgment precludes his right to assert its nullity, and, therefore, plaintiffs, for that reason, may not now assert the nullity of the judgment or order dismissing their action "with prejudice." Cited in support of this contention is the case of Dipuma v. Anselmo, La.App.1st Cir., 1962, 137 So.2d 76. The record establishes the contrary. There has been no acquiescence in the order dismissing the action "with prejudice." Plaintiffs, as heretofore pointed out, acquiesced in the ruling of the court that it was without jurisdiction of the action, but not in the subsequent order of dismissal of their action "with prejudice."
Therefore, for the reasons assigned, we are constrained to hold that the judgment of the Second Judicial District Court for Claiborne Parish, in dismissing plaintiffs' action "with prejudice," is absolutely null and void to the extent of the dismissal of plaintiffs' action "with prejudice," and, to that extent, has no legal existence; that the order and judgment, being thus null and void, cannot have the force and effect of the thing adjudged so as to constitute res judicata of the merits of plaintiffs' claims.
Although this cause was tried upon its merits, no pronouncements were made with respect thereto. Indeed, it may be observed, from the condition of the proof in the record, such as the absence of material portions of the succession proceedings, inventories, appraisements, judgments of possession, et cetera, as well as the lack of adequate proof of the succession assets and their value, that no pronouncement upon the merits appeared possible. As heretofore pointed out, the appeal was from a judgment sustaining a plea of laches and estoppel, and by an answer to the appeal, the plea of res judicata was presented. These were the only matters presented to this court under the present appeal.
Therefore, it is Ordered, Adjudged, and Decreed that the judgment appealed be, and it is hereby, annulled, avoided, reversed, and set aside; the exceptions of no cause and of no right of action, and the pleas of lis pendens, estoppel, laches, and res judicata be, and they are hereby, overruled; and,
Accordingly, this cause is remanded to the Honorable, the Twenty-Sixth Judicial District Court in and for Bossier Parish, Louisiana, for further proceedings consistent with the views herein expressed and in accordance with law.
The costs of the present appeal are assessed against the defendant-appellee; the assessment of all other costs shall await final determination of this cause.
Reversed and remanded.