271 So.2d 642 (1972)
Mathilde BABIN, Plaintiff-Appellee,
v.
MONTEGUT INSURANCE AGENCY, INC., Defendant-Appellant.
No. 9145.
Court of Appeal of Louisiana, First Circuit.
December 26, 1972.
Rehearing Denied January 31, 1973.
*643 Sidney P. Ingram (Watkins, Watkins & Walker), Houma, for defendant-appellant.
Elton A. Dorsey, Houma, for plaintiff-appellee.
Before SARTAIN, BLANCHE and EVERETT, JJ.
SARTAIN, Judge.
This is a boundary action brought by Mathilde Babin against Montegut Insurance Agency, Inc. to fix the boundary between their respective properties in the City of Houma, Louisiana. Plaintiff is the owner of the southwest portion of Lot 15 and the defendant is the owner of the remaining southerly portion of Lot 15 and the southeast portion of Lot 14 of Block 91. These lots front on the north side of School Street.
The court-appointed surveyor platted the properties according to title and found that there was sufficient area in Block 91 to provide each owner of property in Block 91 with sufficient footage as their respective titles called for. However, the trial judge concluded that the common boundary between plaintiff and defendant was actually marked by an old fence that was located 2.3 feet west of the line called for in plaintiff's deed, which fence ran parallel to plaintiff's western title boundary. Hence, the property in controversy measures 2.3 feet front on the north side of School Street by a depth of 90 feet.
Plaintiff, in asserting ownership to the old fence line bases her claim on a plea of estoppel and 30-year acquisitive prescription. The trial judge denied plaintiff's plea of estoppel. However, he upheld plaintiff's plea of prescription and fixed the boundary between the parties along the old fence line. From which judgment defendant has appealed.
For reasons hereinafter stated we must hold that the trial judge committed manifest error in concluding that plaintiff acquired the property in dispute by 30-year prescription.
The record discloses that both pieces of property (Lots 14 and 15, Block 91) were originally owned by Mrs. William Wright, Sr. and her family, and were sold by them to Martial and Alcide Bonvillain by instrument dated December 14, 1905.
*644 Plaintiff's chain of title is as follows:
(1) Dation en paiement from Alcide Bonvillain to his wife, Marie B. Bonvillain, on January 12, 1914, of an undivided one-half interest in a fractional portion of Lot 15 measuring 63 feet front on School Street by a depth of 90 feet;
(2) Tax sale from Estate of M. J. Bonvillain to J. L. Watkins on August 27, 1927, of his undivided one-half interest in the portion of Lot 15 on School Street;
(3) Sale by Marvin B. Bonvillain and J. L. Watkins to Miss Elmire Bonvillain of Lot 15, Block 91, measuring 63 feet on School Street by a depth of 90 feet, on August 30, 1930; and
(4) Judgment of Possession in the Succession of Elmire Bonvillain in which Lot 15, Block 91, measuring 63 feet on School Street by a depth of 80 feet was transferred to Matilda Babin on July 2, 1960.
The chain of title of defendant is as follows:
(1) Sale with mortgage by Alcide and Martial Bonvillain to Reuben Chauvin of a lot of ground measuring 97 feet on School Street by a depth of 80 feet, being portions of Lots 14 and 15, Block 91, on February 1, 1910;
(2) Sale of the same property by Reuben Chauvin to Community Homestead Association dated February 14, 1935; and
(3) Sale of the same property by Community Homestead Association to defendant under date of February 14, 1935.
Thus it can be seen from the above descriptions that plaintiff purchased a parcel of land measuring 63 feet front on the north side of School Street and defendant purchased the adjacent parcel of land measuring 97 feet front on the north side of School Street.
On November 22, 1949, Miss Elmire Bonvillain sold to the defendant a portion of Lot 15 to the rear or north of her lot. In this act of sale the tract sold to the defendant was described as being "65 feet more or less" in width by 10 feet in depth. The 65 foot measurement would extend the width of this lot to the point of the old fence. However, Miss Bonvillain owned the property to the rear of plaintiff's present property and could convey the same to defendant to a width of 65 feet notwithstanding the fact that she had previously conveyed property to plaintiff's ancestor in title where the frontage called for only 63 feet. Plaintiff urges in her plea of estoppel that Miss Bonvillain's sale of 65 feet of property located to the rear of plaintiff's property evidences an acknowledgement on defendant's part that the fence line was the boundary line even as to the property located on School Street and this is the basis of plaintiff's plea of estoppel.
As stated above the court-appointed surveyor, William Clifford Smith, found no deficiency in Block 91 and that according to their respective titles defendant owns a front of 97 feet on School Street and plaintiff owns a front of 63 feet. If the fence line is accepted as the common boundary, plaintiff would own a front of 65 feet on School Street and the defendant a front of only 94.70 feet.
Also, according to Mr. Smith's plat and a plat of survey annexed to the 1949 sale, on the east side of plaintiff's lot there is a lot owned by Edmund A. Ostheimer. On the Ostheimer lot a building encroaches apparently 2 feet over onto plaintiff's lot. Mr. Ostheimer testified that he purchased his lot in 1940 and that the building had been erected thereon in 1926.
It was adduced at the trial that a picket fence had existed on or near the conventional line shown on Mr. Smith's survey. *645 This fence had apparently existed for a number of years but there was no testimony presented as to exactly when it was built. According to the testimony of Jasper K. Wright, President of defendant corporation, this fence was removed in 1935 by the defendant's lessee in order to build parking spaces on Lot 14 and a portion of Lot 15 owned by defendant.
The trial court based its ruling on the grounds that this picket fence had existed along the conventional line of the property and that plaintiff and her ancestors in title had possessed the portion of Lot 15 east of the fence for more than thirty years.
The defendant argues that the trial judge erred in upholding the possession line as the boundary line based on thirty years acquisitive prescription and further that the court erred in not casting the plaintiff for the costs of these proceedings. Plaintiff answered the appeal seeking to have the defendant cast for costs, and also reasserts her plea of estoppel. The trial judge's written reasons for judgment and the judgment signed in conformity therewith are silent as to costs.
The issues presented for resolution here are:
(1) Is defendant estopped by the sale and plat of 1949 from claiming that the boundary line should be fixed as per title;
(2) Has plaintiff borne the burden of proving acquisition of title to the disputed strip on the basis of thirty years acquisitive prescription; and
(3) Which party should be cast for costs?

ESTOPPEL
Plaintiff argues that defendant is estopped to deny that the old fence line is the true boundary between the two lots due to the act of sale with plat attached by Miss Elmire Bonvillain to the defendant in 1949 of the rear portion of her lot, which showed the west boundary to be on the old fence line. This sale only involved the rear portion of the Bonvillain lot, which portion was described as being 65 feet "more or less" in width, by 10 feet in depth. Plaintiff contends that the continuation of the west boundary line, marked line "A-B" on the plat of survey attached to that act of sale, establishes that defendant recognized the old fence line as the boundary line between the two lots and is now estopped to deny that line as the boundary.
The trial court ruled that estoppel did not apply in this case and held that an extension of line "A-B" to School Street played no part in the 1949 transaction between plaintiff's ancestor in title and defendant because that transaction only involved the sale of the rear portion of the lot and not the entire lot.
There are apparently three classifications of estoppel in our law, namely: (1) Estoppel by record; (2) Estoppel by deed; and (3) Estoppel "in pais" or equitable estoppel. Humble Oil & Refining Company v. Boudoin, 154 So.2d 239 (3rd La.App.1963) writ refused, 245 La. 54, 156 So.2d 601 (1963). In the case of Calhoun v. Huffman, 217 So.2d 733 (3rd La.App. 1963), writ refused, 253 La. 878, 220 So.2d 460 (1969), quoted by the trial judge in his reasons for judgment, equitable estoppel is defined as the effect of voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Public policy and good faith are the basis of the doctrine, which is designed to prevent injustice by denying the party the right to repudiate his acts, admissions, or representations upon which the other party has relied. Shirey v. Campbell, 151 So.2d 557 (2nd La.App. 1963).
The general rule is that estoppels are not favored in our law. Muhleisen v. Allstate Insurance Co., 203 So.2d 847 (4th La.App.1967).
*646 In Shirey v. Campbell, supra, it was specifically stated at page 560:
"Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, and the burden of establishing the facts upon which the plea is predicated, as well as affirmatively showing that the pleader was mislead and forced to act to his prejudice, rests upon the party invoking the doctrine." (citations omitted).
Plaintiff contends that since defendant was a party of the act of sale and attached plat of survey in 1949 which showed line "A-B" as being the west boundary of plaintiff's rear portion of Lot 15, that defendant is now estopped to assert that line "A-B" extended to School Street is not the correct west boundary of the remainder of plaintiff's portion of Lot 15. In support of this contention plaintiff primarily relies on the cases of Zeringue v. White, 4 La.Ann. 301 (1849) and Conlay v. Grillette, 70 So.2d 139 (2nd La.App.1954).
In Zeringue the Court held that where an act of sale refers to a plan of survey and the purchaser has possessed in conformity with it, he will be estopped from claiming other boundaries on the grounds that the lines represented on the survey are not in accordance with the original grant. It appears that in this case the original grantee recognized the incorrect survey and it was mentioned in all subsequent sales of the property. However, in the case at bar the 1949 sale and survey only involved the rear portion of plaintiff's lot and not the whole lot. Also, in subsequent transactions involving the property, namely the 1960 judgment of possession, plaintiff's lot was described as 63 feet in width and no mention was made of the 1949 survey plat as showing the lot to be 65 feet in width.
In Conlay, supra, plaintiffs were held estopped from questioning the boundary between two estates marked by a fence which had been accepted as the boundary line by plaintiff's ancestor in title. Plaintiff had purchased the property five years before the boundary dispute and the fence had existed previous to their purchase and was still standing at the time of the dispute. In the case at bar the old picket fence was removed by defendant's lessee shortly after defendant purchased Lot 14 and a portion of Lot 15 in 1935.
Plaintiff also cites the case of Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633 (1940) in which the plaintiffs sought to be declared owners of certain property by attacking the deeds in which they had sold their interests in the property to others. The Supreme Court held they were estopped to deny the facts asserted in the contracts executed by them in the absence of fraud or mistake. Plaintiff in the case at bar argues that defendant should be similarly estopped from denying the boundary line "A-B" contained in the 1949 sale and survey. However, it is clear that the 1949 sale dealt only with the rear portion of Lot 15 owned by plaintiff's ancester in title and any admission of fact by defendant therein can only be seen as affecting the boundary of the portion then sold and not the remainder of Lot 15 now at issue.
Defendant states that there are three elements to an estoppel: representation, reliance, and a change of position to one's detriment. Olin Gas Transmission Corporation v. Harrison, 143 So.2d 721 (1st La. App.1961), certiorari denied, November 6, 1961. Defendant contends that plaintiff has not shown the presence of any of these three necessary elements.
It appears clear that the 1949 sale did not represent that the entire lot owned by plaintiff's ancestor in title was 65 feet in width, buy only that the rear portion of the lot sold to defendant in that act of sale measured 65 feet "more or less" in width. The 1949 act of sale did not deal with the remainder of Miss Bonvillain's lot, only the rear portion thereof.
The 1949 act of sale could not have been relied on by plaintiff's ancestor in title as *647 giving her a 65 foot width on the remainder of her lot because at all times her title stated that her property was 63 feet in width. In addition, it was stated in Shirey v. Campbell, supra, that there can be no reliance upon the representations made by the other party where the party pleading estoppel had actual knowledge of the facts concerning which the representations were made. Even if plaintiff's ancestor in title had no actual knowledge that the property was only 63 feet in width, each and every instrument in plaintiff's chain of title clearly stated that the property was 63 feet in width fronting on School Street, and these instruments afforded a convenient means of acquiring the true facts.
Finally, there was no change of position by plaintiff's ancestor in title to her detriment by reason of the representations made in the 1949 act of sale. Both before and after the sale plaintiff's ancestor in title owned a frontage of 63 feet on School Street. Admittedly, the Ostheimer building encroaches about two feet over the east line of the property, but plaintiff's ancestors in title apparently acquiesced in this encroachment and defendant should not now be required to suffer loss because of the wrongful act of plaintiff's other neighbors.
Thus, it is apparent that the trial court correctly concluded that the plea of estoppel was not well taken.

ACQUISITIVE PRESCRIPTION
Plaintiff asserts that she and her ancestors in title have possessed the property up to the fence line continuously as owner for more than thirty years. Her plea of prescription is also based on the assertion that an old garage or shed also existed on or over the old fence line and that she occupied this structure as owner for a period in excess of thirty years.
As stated above the trial judge found that plaintiff and all her ancestors in title had in fact possessed up to the fence line continuously and uninterruptedly for a period in excess of thirty years. This conclusion on the part of the trial judge appears to have been partially based on his own personal recollection of the length of time which the fence was in existence. In this connection we must state that if the decision of the trial judge was based in part on the court's individual knowledge of facts which are not in the record, then this reliance on his personal memory is in error. As aptly stated in State Department of Highways v. Thurman, 231 So.2d 692 (1st La.App.1970):
"Judicial knowledge is limited to what a judge properly may know in his judicial capacity, and he is not authorized to make his individual knowledge of a fact, not generally known, the basis of his action.. . ."
According to the testimony adduced at the trial it appears that no one actually knows exactly when the old fence was constructed, although it is clear that the fence was very old and had been on the property for many years. However, during a portion of the time of the existence of the fence, both Lots 14 and 15 were owned in indivision by Alcide and Martial Bonvillain until 1910, when Lot 14 and a portion of Lot 15 were sold to Reuben Chauvin, ancestor in title of the defendant. It is well established that where two tracts of land have a common owner there can be no adverse possession because an owner cannot prescribe against himself. C.C. Art. 3514; Jones v. Dyer, 71 So.2d 648 (1st La.App., 1954); and Porche v. Martin, 177 So.2d 288 (1st La.App., 1965). According to the testimony of Mr. Wright, which was not rebutted at the trial, the picket fence was standing when defendant purchased the property in 1935 but was removed very shortly thereafter. Thus, adverse possession based on the fence alone could only have been exercised from 1910 (when the two estates ceased to have a common owner) until 1935 (when the fence was removed), a period of only 25 *648 years. Therefore the plea of prescription of 30 years based upon the existence of the old fence cannot stand.
Now as to the old garage, we also hold that its existence does not support a proper indication of adverse possession upon which 30 year prescription can be based. The survey dated September 18, 1930, and the testimony of Mr. Smith indicate that the old garage was located near the northwest corner of plaintiff's property. However, it is not clear from the map and the testimony exactly where the garage was located in relation to the boundary lines. It is not shown on the 1949 plat nor is it shown on the plat made by the court-appointed surveyor in 1969. There is testimony to the effect that the garage had been erected by Mr. Felix Bonvillain and that it was totally destroyed by a storm some four years prior to the trial of this matter. There is further testimony that plaintiff's ancestor in title, Miss Elmire Bonvillain, had rented the garage before her death. However, its exact location and time of construction were not established.
A person pleading the prescription of 30 years bears the burden of proving open, public, and adverse possession by a preponderance of the evidence and every presumption is in favor of the holder of the legal title. C.C. Art. 3499; Matthews v. Carter, 138 So.2d 205 (2nd La.App. 1962); Chapman v. Morris Building & Land Improvement Association, 108 La. 283, 32 So. 371 (1902). The proof and testimony in the record before us is insufficient to establish the 30 years acquisitive prescription claimed by the plaintiff based on the existence and use of the old garage by plaintiff's ancestor in title.
With respect to the cost of these proceedings, the testimony reflects that the line common to properties of plaintiff and defendant could be determined only by survey. The court-appointed surveyor marked corners of the property as per title. We think that it is fair and reasonable to have the parties in this litigation share equally in the cost for both have received the advantage of having this line accurately established.
Accordingly, for the above reasons the judgment of the trial court fixing the boundary between plaintiff and defendant to conform to the previously existing fence line and based on acquisitive prescription of thirty years is reversed and set aside and judgment is rendered herein fixing the boundary between plaintiff and defendant in accordance with the plat of survey made by William Clifford Smith, May 21, 1965, and indicated thereon as the line "D"-"C". The cost of these proceedings are to be borne equally by plaintiff and defendant.
Reversed and rendered.