GLADNEY, Judge. , .
Shreveport Municipal Fire and Police Civil Service Board appeals "from a judgment obtained by four classified■ Civil Service employees enjoining it from proceeding with an open or public investigation of their conduct and performance as employees of the City of Shreveport. Suits were separately brought on substantially the same grounds by Chief of Police E. G. Huckabay, Patrolman O. C. Merrett, Assistant Chief of Bureau of Fire Prevention Raymond B. Oliver, and Chief Fire Inspector Victor Bussie, in each of which cases it was alleged the proposed investigation by the Civil Service Board, was without statutory authority and would constitute an invasion of their personal civil rights. After separate appeals were perfected in this court the death of E. G. Pluckabay occurred and his action has abated.
The instant action by O. C. Merrett followed an announcement by the Civil Service Board of its intention of conduct-. ing on its own initiative an open or public investigation affecting each of said employees. In furtherance thereof the Board mailed December 4, 1953 to each employee letters worded substantially alike advising' such proceedings would commence on December 11, 1953, for the purpose of determining: “(1) to what extent, if any^ you participated in or were connected with any investigation of the conduct of Commissioner of Public Safety, A. B. Morris, at any time during the year 1946 through the present time; (2) to what extent, if any, you participated during said period in any action or conspiracy which had as its purpose the coercion of Commissioner A. B. Morris through direct or indirect threats into taking or failing to take any action in connection with his duties as Commissioner of Public Safety; and, (3J to what extent, if any, during said period' you succeeded in so coercing Commissioner Morris.”
The letter further stated: “During the" course of the investigation," you "will be’ given the right of cross-examination ■ of", witnesses and you will have an opportunity to present testimony and evidence for the' purpose of refuting any testimony or evi'-’ dence which reflects upon your conduct or performance with respect to the subject, matter of this investigation.” ,
After receipt of this communication Merrett appeared before the Civil .Service, Board and made formal objection that it; was without authority or jurisdiction to hold the investigation. This objection was overruled and Merrett notified the Board he would appeal to the District Court of Caddo Parish, assigning in writing specific grounds for the action to be taken by ■him. On December 9th suits by each of the four employees were brought in the District Court to restrain and enjoin the' Civil Service Board from taking further action in its announced investigation.
Prior to proceeding with trial the defendant moved -for an order consolidating the separate suits foir trial on the merits and for hearing of all preliminary matters therein. There was also filed a motion *522 to dissolve the restraining order which had been issued on December 9th, and to recall the rule for a preliminary injunction. The motion to consolidate was granted. The motion to dissolve was denied and respondent filed its answer in which it averred the proposed investigation was lawful .in all respects and that it was the duty of the members of the Shreveport Municipal Fire and Police Civil Service Board to undertake the investigation.
The court, upon trial of the rule for preliminary injunction, made the rule absolute, conditioned upon each of plaintiffs posting bond as specified in its ruling. The consolidated cases were thereupon submitted upon an agreed statement of facts for decision upon the merits, which ruling would determine whether or not a permanent injunction would issue.
The stipulated facts admit the status of the parties, the absence of written complaints of misconduct, the notices of intention to hold the subject investigation and that plaintiffs have exhausted their administrative remedies- before the Civil Service Board. .Other material facts agreed upon are:
“Defendant proposes and will conduct the proposed investigations in accordance with the following plan and procedure:
“(a) The investigations will be separately conducted in a sequence decided upon' by lot as follows:
“First — O. C. Merrett
“Second — Victor Bussie
“Third — E. G. Huckabay
“Fourth — Raymond B. Oliver
“(b) The investigations will deal with the subject matter described in the four letters to plaintiffs, each dated December 4, 1953, their contents -being fully set forth in plaintiffs’ petitions.
“(c) During said investigations, the person whose conduct is 'being investigated will have the right to be represented by counsel, will have the right of cross-examination of all witnesses and will have the opportunity of presenting testimony and evidence for the purpose of refuting any testimony or evidence which reflects upon his conduct or performance.
“(d) During the investigations, witnesses will be called -and examined for defendant by its counsel, John A. Dykes, and subject to the right of the defendant to call, additional witnesses or ask additional questions, and further subject to the right of cross-examination and refutation, the presentation of witnesses and evidence will be handled by said Dykes for the Board and by the attorney for the plaintiff being investigated.
“(e) Subject to arranging convenient dates with -plaintiffs and their attorneys, defendant will schedule the investigation in such a way that not more than a week will elapse -between the close of one investigation and the commencement of- the next. In- this connection, defendant plans to notify all parties of the specified scheduled commencement date of each investigation so that each party will have at least ten (10) days’ notice before the beginning of his investigation.
“(f) Defendant plans to subpoena and call as witnesses each of the plaintiffs in each of the investigations and plans to require that plaintiffs answer all questions dealing with the subject matter of the par-, ticular investigation, unless the plaintiffs refuse to answer on the grounds of self-incrimination. Any other refusal to answer will be ruled upon strictly within the discretion of the defendant Board.
“(g) The investigations wil be held in the Council Chambers of the Shreveport City Hall and will be open to the public and the press.”
“If as a result of the proposed investigation, in the opinion of the Board, corrective or disciplinary action is indicated, then in that event, the Board will be advised by its attorney, Mr. John A. Dykes, that it has the authority to order disciplinary action or corrective action to be taken, and if such corrective or disciplinary action is taken, as to any plaintiff or plain *523 tiffs against whom it is taken, the investigation will have been a trial.
* * * * * *
“The proposed investigation . will be public with the testimony of all witnesses being available to the press and radio announcers; that the hearings almost certainly will last several days and that there would be an opportunity for the press and radio announcers to play up the subject matter for a number of days.”
“In connection with Sub-Paragraph F of Stipulation Number 3 above, that the only way in which any of the plaintiffs in these consolidated suits could keep from testifying would be to refuse to testify on the grounds of self-incrimination, the stipulation above setting forth that the Board proposes to call each as a witness in the investigation of the other; that they will either be required to testify or rely on State and Federal laws regarding self-incrimination; and while they could be called as witnesses before the Grand Jury, their refusal to testify on grounds of self-incrimination would be secret and would not be a matter of public record; that under the proposed plan of investigation each of the plaintiffs would be required in public and publicly to state that he refused to testify on the grounds of self-incrimination, that is, if he did not desire to testify.”
“The said Board does not propose to be bound by the legal rules of evidence. Further, the Board proposes' to hear all evidence which it deems to be relevant to the announced subject matters .or such additional subject matters, as may.be later announced, without regard for whether or not such evidence involves criminal activities.”
“If disciplinary action is taken against any" of the plaintiffs as a result of the said investigations, before such plaintiff could resort to court action, the said plaintiff would have to appeal his case to the identical Board that ordered such disciplinary or corrective action to be taken and judicial review would be limited to consideration of- whether the action was taken in good faith for cause.”
“The said Board, in connection with the proposed investigations, proposes to use its power of subpoena against your plaintiffs under the Civil Service law. If the testir mony indicates criminal activity on the part of any plaintiff, such testimony will be adduced in public with newspaper reporters present or plaintiff or plaintiffs will be forced to rely on the constitutional and civil service provisions against selfr incrimination, in public, with newspaper reporters present.”
“There is a great deal of public interest in the proposed investigations and the local newspapers and radio stations plan to give extensive publicity to the ■ investigations if held.
* * * * * *
“Defendant had notified plaintiffs by-separate letters dated' October 10, 1953, that an investigation of their conduct and performance would bfe held. With the exception of the difference in names a,nd titles of the addressees, each of these letters is in accordance with the . copy annexed to plaintiff Merrett’s petition and marked T-l’ for identification.
* * •’ * ⅜ * *
“If called as witnesses, each of the memi-bers of defendant Board.who were present when said decision was made would testify that' the decision to hold these investigations was the result of the introduction of testimony and evidence in the O. C. Merrett ‘hearing. Further,' when the case is submitted, in addition to offering this stipulation, defendánt will offer the record in the O. C. Merrett hearing1 and plaintiffs will enter at that time objection to the offering of the record in the O. C. Merrett case.; that the Court will then rule as to whether the record in ‘the O. C. Merrett case will be received in evidence on behalf of defendant or whether plaintiffs’ objections will be sustained.
“Further, the offering of said record and the argument and ruling thereon will be heard in Chambers at the earliest date which can be arranged.”
On January 27, 1954, judgment was rendered permanently enjoining and restrain *524 ing the Shreveport Municipal Fire and Police Civil Service Board of the City of Shreveport, Louisiana from holding a public investigation pursuant to defendant’s letter of December 4, 1953, without prejudice to the right of defendant to conduct and hold a public trial of any specific complaint or complaints made or which may be made against either or all of said plaintiffs.
Appellees have filed separate motions to dismiss the appeals herein taken, averring that the ultimate question to be determined in the investigation by the Civil Service Board and by the pending suits is the right of movers to hold their respective offices, the annual emoluments of which exceed the jurisdictional limitations of this court. Also each of appellees has filed an answer to the • appeal asking that the judgment from which appealed be modified by striking therefrom the following words: ■“Said injunction is granted without prejudice to the right of defendant to conduct and hold a public trial of any specific complaint or complaints made or which may be made against either or all of said plaintiffs.”
We first direct our attention to the motion to dismiss the appeal which avers the investigation contemplates removal of each of appellees from the office held by him and the emoluments derived from such office are in excess of $2,000. Affidavits support the averments of the motion. The motion cannot be sustained for the offices and positions held by appellees are not affected by the suits being considered on these appeals. The record before us furnishes no indication as to what disciplinary action, if any, may be taken following an investigation as to the conduct of each of said employees in the performance of their respective duties. It should be observed also the Civil Service Board only recommends disciplinary action, the power to place into effect such recommendations being reserved to the appointive power. 'The motion to dismiss is, therefore, denied.
The Municipal Fire and Police Civil Service law affecting the City of Shreveport has been incorporated into the Revised Statutes of 1950 as LSA-R.S. 33:-2471 through 33:2508. These statutory provisions in their entirety were by Act No. 302 of 1952 submitted to the electorate for approval as Section 15.1 of Article XIV of the Louisiana Constitution, which act was adopted as a constitutional amendment November 4, 1952. Paragraph 39 of Section 15.1 declares the provisions of the Section are self-executing and self-operative. Section 15.1 contains thirty-nine (39) paragraphs and covers approximately twenty-four (24) pages of the Louisiana Constitution. Inter alia, the section provides for the constitution of the Board, prescribes its duties, grants authority to adopt and execute its own rules and regulations, directs the establishing of classified and unclassified service, provides for corrective and disciplinary action and for maintaining standards of service, regulates the procedure in appeals by employees to the 'Board, and prohibits certain activities by employees in the Civil Service.
Among the designated duties of the Board are to make, at the direction of the Mayor, Commissioner of Public Safety, Chief of either the Fire or Police Department, or upon the written petition of any citizen far just cause, or upon its own motion, any investigation concerning the administration or personnel or the compliance with the provisions of the Section in the said municipal fire and police services; review and modify or set aside upon its own motion, any of its actions, take any other action which it determines to be desirable or necessary in the public interest, or to carry out effectively the provisions and purposes of the Section; and to conduct investigations and pass upon complaints by or against any officer or employee in the classified service for the purpose of demotion, reduction in position or abolition thereof, suspension of (or) dismissal of the officer or employee, in accordance with the provisions of the Section. Par. 7(d, e) of Section 15.1, Article XIV, Constitution 1921.
*525 Parag-raph 30 provides for corrective and disciplinary action for maintaining standards of service and declares:
“a. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
******
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
***** *
(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.
******
“c. Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, the board may, and shall upon the written request of any qualified elector of the state which sets out the reasons therefor, make an investigation of the conduct and performance of any employee in the classified service and, thereupon may render such judgment and order action to be taken by the appointing authority. Such action shall be forthwith taken ’by the appointing authority.
“d. In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor.”
We have given earnest consideration to the written reasons assigned by the District Court for its decision. By way of recapitulation we restate these to be substantially as follows:
(1)The legally designated functions of the Civil Service Board are advisory and quasi-judicial. In the first category it functions with respect to the administration of personnel over the entire departments under its control and advises the appointing authority on any subject submitted to it. In a quasi-judicial capacity it (a) acts as an appellate tribunal to decide appeals by policemen and firemen against some disciplinary action which has been taken by the appointing authority, and (b) investigates and passes upon complaints by or against policemen or firemen. The court concluded the Board had authority only to act upon a complaint made by either the appointing authority or a qualified elector and that without such a complaint it could not hold a public investigation. The reasoning finds the provisions of paragraph 31 have no application except where an appeal from corrective or disciplinary action is involved.
(2) The Board is not empowered to hold a public hearing for the sole purpose of securing evidence for the Grand Jury. It is restricted to passing upon complaints for the purpose of recommending to the appointing authority the penalty to be imposed.
(3) That in an investigation, hearing or trial by the Civil Service Board each of plaintiffs has the constitutional right to be informed of the specific act or acts for which the employee is to be tried and the employee has the right to be represented by counsel and to have his witnesses heard. It was concluded that the notice received by each of appellees and the procedure contemplated by the Civil Service Board do not meet these requirements.
With much force counsel for the Civil Service Board urges that the sole issue presented for decision on this appeal is whether or not the Shreveport Municipal Fire and Police Civil Service Board is vested with legal authority to conduct investigations of the conduct and performance of plaintiffs bearing upon the announced subject matter and in accordance with the procedure which has been adopted.
Some sixteen objections to the validity of the procedure proposed in conducting *526 the investigation were made in appellees’ pleadings. Omitting charges not argued or urged in this court we believe appellees’ contentions are substantially embraced in the following:
(1) The authority of the Civil Service Board is restricted to matters involving the “administration of personnel” -and the subject matter of the proposed investigation exceeds the power of the Board;
(2)- The investigative authority of the Civil Service Board is limited to matters initiated upon complaints or written request of qualified electors and the appointing authority and must be preceded by specific written charges against the employees ;
(3) The proposed investigation is patterned after the procedure outlined in the section of the Constitution strictly relating to appeals by employees to the Board, and by adopting the public hearing procedure set' out for appeals the Board grievously misapplied the law;
(4) The proposed procedure would, if permitted, violate the personal rights of plaintiffs under the Constitution ,®f the United States and of the State of Louisiana, guaranteeing due process 'of law and protection from self-incrimination;
. (5) That the real purpose of the proposed investigation is to secure evidence for the Grand Jury and has no proper relationship to the .duties of the Civil Service Board; and
(6) Appellee Merrett contends the proposed investigation is illegal for failure to give -ten days’ -notice in advance- of the date fixed for 'the' commencement of the open or public investigation. •
 Under Article XIV, Section 15.1, paragraph 30(a) of the Louisiana Constitution tenure of persons in the classified service is conditioned' upon good behavior and the appointing authority is therein authorized .to take. disciplinary action for any one or more of fifteen enumerated causes, which embrace any act to the prejudice of the’'departmental service contrary to the public interest or policy; and the right to so proceed when the Civil Service Board deems an act sufficient-to show the offender to be an unsuitable or unfit person to be employed in the respective service. Subparagraph (c) of paragraph 30, quoted above, expressly and plainly empowers the Civil Service Board to initiate corrective or disciplinary action. Such action is mandatory upon the written request of a qualified elector. Clearly, the language authorizes an investigation without such written request. Its verbiage, in our opinion, is free from ambiguity and doubtful meaning. Nor need we pause to belabor objections made that such an investigation may not be publicly conducted. Specific -authority therefore, is expressly granted in paragraph 31 of Section 15.1 of Article XIV of the Louisiana Constitution. It declares: “ * * • * All such hearings and investigations conducted by the board pursuant to the provisions of this Section shall be open to the public. * * * ” The court a qua and,counsel for appellees reason that this provision is incorporated in a section restricted entirely to appeals by employees to the Board. The paragraph does bear the caption “Appeals By Employees To The Board”, but the full meaning of Section 15.1 must be gained from the whole context and the use of "the word “Section” can refer only' to Section 15.1 of Article XIV of the Louisiana Constitution, and not to a subdivision thereof.
'We turn now to the objection raised in this court to the validity of the investigation and the- proceedings in connection therewith, as summarized and enumerated above. .. The first contention is that the Civil ■Service Board’s authority ,is restricted to •matters involving “Administration of personnel” and that the proposed matter to be investigated exceeds the power, • of the Board. The position is clearly untenable. Section, i5.1,r paragraph 30 of the Constitution authorizes, an inquiry into an act of a,Civil Service,enrp.loyee which may be to the prejudice oi the service or contrary to the public interest or policy of the employee’s ’department and any other act of commission or omission tending to show *527 an employee to be an unsuitable or unfit person to be employed in the respective service. These provisions have for their purpose the maintaining of special standards of service and of employment and tend to create a greater efficiency in public service.
The second objection is that the investigating authority -is limited to matters initiated upon- complaints or written requests of qualified electors and the appointing authority and must be preceded by specific written charges against the employees. Paragraph 30, subparagraph (c) above quoted, specifically authorizes the Board to take action on its own initiative. Such action is not necessarily dependent upon written requests of qualified electors of the appointing authority. The contention that the proposed investigation was not preceded by specific written charges against the employees is not substantiated. The record makes it crystal clear the proceedings would be confined to the three points of inquiry enumerated in the letter of the Board dated December 4th addressed to each of appellees. The purpose of the investigation was to obtain evidence from which it could be determined if the conduct of any of said employees would be prejudicial to the service and subject to disciplinary acr tion. We do not understand the proposed proceedings comprehend direct disciplinary action but are merely for factual determination. Obviously, specific charges of misconduct cannot be made until adequate evidence has been obtained. It is not essential that the scope of -such investigation be defined with the same precision required in indictment. State ex rel. Perez v. Whitaker, Inspector of Police, 1906, 116 La. 947, 41 So. 218. The record reflects a prior public hearing had been conducted for the plaintiff, Merrett. In that hearing evidence was adduced which prompted the Civil Service Board to undertake the instant investigation. In the light of the letter from the 'Board of December 4th specifying the scope of the investigation it is difficult to understand how any of the appellees can be uninformed as to the nature of the' inquiry;
Thirdly, it is argued that in matters of appeal before the Board the hearing is at the request of the employee, who may, if he so wishes, face his accusers, produce his witnesses, and have an opportunity to remove any stigma from his name and reputation, but, it is so asserted, in the proposed investigation when the employee has-' been disciplined and discharged the damage to his name and reputation has been done. Non sequitur'. Counsel overT look the fact. that in the instant- investigation under the procedure as outlined the employee is afforded full opportunity to produce testimony and refute any evidence produced against him.- Not only this, should the Board recommend to the appointing authority disciplinary action, the right of the employee to again bring the matter up before the Board by appeal is 'preserved, and,'if then not satisfied with the finding on the appeal, the law provides full and adequate judicial relief against any unlawful action against him. Under the Constitutional provisions of Section 15.-1,' Article XIV, the Board is empowered to make its own rules and regulations. It has done so for the instant investigation. We are furnished no reason why such rules of procedure are unfair or interfere with appellees’ personal rights.
Seemingly, appellee’s chief objection to the hearing is that it is to be open to the public. In adopting Section 15.1 as an amendment to the Constitution, the Legislature and the electorate of this state have declared such investigation shall be open to the public. Until this constitutional provision is held invalid or repealed, it must be respected not only by the citizens of this state but by the officials of the state and its subdivisions and more especially by the courts.
- Fourth, without specifically indicating in what respect appellees would be deprived "of due process of law as guaranteed under Article I, Section 2 of the Louisiana Constitution of 1921, and the 5th and 14th amendments to the Constitution of the United States, appellees argue that the proposed hearing would deprive them of due process of law. .
*528 All laws are presumed to be constitutional until the contrary is clearly shown and one urging the unconstitutionality of a law must specifically plead its unconstitutionality and show specifically wherein it is unconstitutional. State v. Great Atlantic & Pacific Tea Company, 1938, 190 La. 925, 183 So. 219, certiorari denied Great Atlantic & Pacific Tea Company v. State of Louisiana, 305 U.S. 637, 59 S.Ct. 108, 83 L.Ed. 410; Stovall v. City of Monroe, 1941, 199 La. 195, 5 So.2d 547; Ricks v. Close, 1942, 201 La. 242, 9 So.2d 534; National Bank of Commerce in New Orleans v. Board of Sup’rs of La. State University and Agricultural and Mechanical College, 1944, 206 La. 913, 20 So.2d 264; A. Sulka & Company v. City of New Orleans, 1945, 208 La. 585, 23 So.2d 224; and where the pleadePs allegations do not state in what respect he is being deprived of property or pérsonal rights without due process of law, such allegations are.mere conclusions and need not be considered by the court. Creel v. Creel, 1950, 218 La. 382, 49 So.2d 617; Olivedell Planting Co., Inc. v. Town of Lake Providence, 1950, 217 La. 621, 47 So.2d 23; Nassar v. Board of Com’rs for Pontchartrain Levee Dist., 1948, 214 La. 214, 36 So.2d 761.
Presumably, the only specification of want of due process is the charge that the notice as to the scope of the investigation is not sufficiently definite. This objection -has previously been discussed by the court and our opinion is firm that the notice was adequate. We find rio merit in the contention that the proceedings deprive ap-pellees of due process of law.
It is further contended that in the proposed investigation the Board intends to call each appellee as a witness and that because of this fact the employee may be required or compelled to give evidence incriminating himself in violation of his rights under the fifth amendment to the Constitution of the United States and Article I, Section 11 of the Louisiana Constitution. Paragraph 31 of Section 15.1 specifically recognizes the constitutional guarantee against self-incrimination. The objection, to say the least, is premature. We find nothing in the procedure proposed that would deprive any of appellees of their constitutional rights.
Fifthly, it is contended the real purpose of the proposed investigation is to secure evidence for the Grand Jury and has no relationship to the duties of the Civil Service Board. This charge is not substantiated by the record which indicates clearly the real purpose of the Board is to determine whether the past conduct of any of appellees in connection with the matter to be investigated is-prejudicial to the departmental service or contrary to the public interest or policy. Should evidence be obtained indicative of any violation of criminal law it would then most assuredly be the duty of the Board to make the record available to proper law enforcement officers. We know of no vested right appellee would have to prevent such action.
Lastly, we pause to consider the contention of appellee Merrett that the proposed investigation is illegal for failure to give ten days notice in advance of the date fixed for the commencement of the open or public investigation. This question, of course, has become moot inasmuch as the restraining order stopped further procedure prior to the hearing. Should the Board decide to proceed further against appellee Merrett an entirely new notice necessarily would have to be given.
In conclusion, it is our finding that the Shreveport Municipal Fire and Police Civil Service Board has under the provisions of Section 15.1, subd. 30, par. c, of Article XIV of the Constitution of Louisiana, adequate and full authority to conduct an investigation on its own initiative and is not restricted to proceeding’s instituted upon written statements or complaints from the appointing authority or members of the electorate. The Constitution specifically directs such an investigation to be open to the public. Appellees have entirely failed •to substantiate their contentions that they would be denied due process of law or be deprived of their constitutional guarantee *529 against self-incrimination. The procedure indicated for the proposed investigation if adhered to, should in no wise result in a violation of the constitutional rights of ap-pellee.
It follows from our findings above set forth that the judgment from which appealed should be and is hereby reversed and set aside; and plaintiff’s demands are rejected at his cost.