McCALEB, Justice.
On December 4, 1953, the Shreveport Municipal Fire and Police Civil Service Board notified relators (members of the Fire Department) and two officers of the Police Department, Chief of Police E. G. Huckabay and Patrolman O. C. Merrett, that it intended to investigate their conduct with respect to their participation in a conspiracy having for its purpose the coercion *1072 of Safety Commissioner A. B. Morris of Shreveport, by means of threats, so as to cause him to neglect or fail to perform his official duties. Prior to the scheduled date of the investigation, relators and the two police officers, claiming that the contemplated action of the Board was .ultra vires and unconstitutional for divers and sundry reasons, instituted four similar suits (including the present cases) to restrain the Board from proceeding. After a hearing before the District Court of Caddo Parish, a permanent injunction was granted in conformity with the prayer of the petitions without prejudice, however, to the right of the Board to conduct and hold a public trial when and if specific complaints were made against either one or all of the plaintiffs. From this decision, the Board appealed to the Court of Appeal, Second Circuit, where the ruling was reversed and the complainants’ demands rejected at their costs. See Merrett v. Shreveport Fire and Police C. S. Bd., 72 So.2d 519 and Bussie v. Shreveport Municipal Fire and Police C. S. Bd., and Oliver v. Shreveport Municipal Fire and Police C. S. Bd., 72 So.2d 529.[1] Upon the finality of the judgments of the Court of Appeal, Bussie and Oliver applied for and were granted writs of certiorari, which have been consolidated in this Court and submitted for our decision.
Whereas it appears from relators’ pleadings that-they have enumerated some sixteen objections to'the proposed investigation, their basic complaint is actually twofold: (1) that the investigative power of the Civil Service Board is restricted to matters involving the administration of civil service personnel and that the Board may not examine into the conduct and performance of a classified employee except on complaint initiated by the appointing authority or on written request of qualified electors and (2) that, in the event it be held otherwise, any such investigation must be conducted in private in order to safeguard the employee’s constitutional right of due process of law.
The law governing these cases is “the Municipal Fire and Police Civil Service Law”, which was incorporated in the LSA-Revised Statutes of 1950 as R.S. 33 :2471-2508. These statutory provisions were en-grafted in their entirety into our Constitution as Section 15.1 of Article XIV by amendment approved by the people on November 4th 1952, LSA. The constitutional provisions, which are self-executing and comprise 39 paragraphs, set forth a composite civil service law for policemen and firemen in cities having a population of not less than 13,000 nor more than 250,000. As said by the Court of Appeal in its opinion [72 So.2d 524] “ * * * the section provides for the constitution of the Board, prescribes its duties, grants authority to adopt and execute its own rules and regula *1074 tions, directs the establishing of classified and unclassified service, provides for corrective and disciplinary action and for maintaining standards of service, regulates the procedure in appeals by employees to the Board, and prohibits certain activities by employees in the Civil Service”.
Paragraph 7 of Section 15.1 designates the duties of the Board and, in subparagraph d thereof, it is provided that it shall make, at the direction of certain constituted officials or upon the written petition of any citizen “* * * or upon its own motion, any investigation concerning the administration of personnel or the compliance with the provisions of this Section in the said municipal fire and police services; review, and modify or set aside upon its own motion, any of its actions, take any other action which it determines to be desirable or necessary in the public interest, or to carry out effectively the provisions and purposes of this Section”.
Paragraph 30 specifies that all persons permanently inducted in the classified service shall have tenure during good behavior and that the appointing authority may only remove an employee from the service, or take such disciplinary action against him as the circumstances warrant, when he has failed, by acts of commission or omission, to comply with the standard set forth in said paragraph, which enumerates some fifteen grounds as causes for disciplinary action.
And subparagraph c of Paragraph 30 declares :
“Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, the board may, and shall upon the written request of any qualified elector of the state which sets out the reasons therefor, make an investigation of the conduct and performance of any employee in the classified service and, thereupon may render such judgment, and order action to be taken by the appointing authority. Such action shall be forthwith taken by the appointing authority.” (Italics ours.)
Paragraph 31 of the Section sets forth the remedy available to any employee who has been discharged or subjected to corrective or disciplinary action. It provides that he may appeal to the Board within a fixed time; that the Board shall grant him a hearing within 30 days after receipt of a written request and that “All such hearings and investigations conducted by the board pursuant to the provisions of this Section shall be opened to the public.”
The Court of Appeal found that relators’ complaints were insubstantial in view of the above referred to provisions of Section 15.1 of Article XIV of the Constitution and particularly those which confer upon the Board the privilege of investigating the conduct and performance of any *1076 classified employee, even though no action has previously been taken by the appointing authority or written request made by a qualified elector. The correctness of this resolution cannot be seriously questioned, for Paragraph 30, subpar. c, is perfectly clear and explicit.
However, counsel for relators professes, inter alia, that specific charges must be made before or by the Civil Service Board as a condition precedent to its investigation of the employee’s conduct.
There is no merit in this point as the Civil Service Law does not require that a complaint precede an investigation. On the contrary, the law authorizes the appointing authority to act without giving the employee an opportunity to be heard but, in the event of disciplinary action, the employee has a right of appeal to the Board and ultimately to the courts for a determination of whether the action was taken in good faith for cause. Paragraph 31, Section 15.1 of Article XIV of the Constitution. In like manner, Paragraph 30, sub-par. c, grants to the Board the unqualified prerogative of investigating the conduct of an employee on its own motion and nothing in the law prescribes that such employee even be given notice of the investigation, much less that he be furnished with a statement or detailed account of the conduct to be examined. Nevertheless, the Board has given relators in the instant cases written notification of the specific conduct that will be scrutinized and they have also been advised that they may be assisted by counsel; that they will be called upon to testify, cross-examine witnesses and present testimony, if they so desire, to refute any evidence which tends to reflect upon their conduct or performance as members of the Shreveport Fire Department.
Albeit, it is because of these privileges extended by the Board that relators principally complain — that is, they view with apprehension the proposed public investigation, fearing that it may subject them to unwarranted criticism and adverse publicity. And they say that their constitutional rights will be violated if the open investigation is permitted.
These postulations are untenable. To begin with, relators’ assertions of unconstitutional invasion of their rights are somewhat nebulous. We are told in generalities [2] that the open investigation would violate due process, yet it is difficult to perceive the manner in which due process is denied. Actually, the only vested right which relators have to their positions is that given them by the constitutional amendment itself, i. e., the right of tenure conditioned on good behavior as defined in the law. And, since they are public servants, their conduct and performance of their *1078 jobs are unquestionably a matter of public interest and open to public examination.
The Court of Appeal believed that, since Section 15.1 was the only section in the law relating to the procedure to be followed in conducting hearings and investigations, its provisions were clearly applicable to all investigations by the Board. The conten-' tion that the Board must conduct its proposed investigation in private is founded on the premise that Paragraph 31 of Section 15.1,'declaring that all hearings and investigations of the Board “pursuant to the provisions of this Section” shall be open to the public, applies only to hearings on appeals by employees to the Board, and it is said that the Court of Appeal erred in holding otherwise.
For our part, we find it unnecessary to determine whether counsel’s contention is correct for, if it be conceded that Paragraph 31 refers exclusively to open hearings of appeals by employees to the Board, it is plain that the Civil Service Law contemplates and elsewhere specifies that all hearings and investigations of the Board be open to the public. Indeed, it is manifest to us that, in demanding a private investigation, counsel is again overlooking the nature of relators’ employment, of their status as 'civil servants, and of the public interest in any investigation of their conduct and performance. In addition, it is exceedingly doubtful that the Civil Service Board has the authority to conduct private investigations or hearings, as Paragraph 6, subpar. m, of Section 15.1 declares, among other things, that “Meetings of the boards shall be open to the public.” This envisages that the Board is to act and function only as a body and not through its individual members and that, in order for it to exercise any of the duties listed in Paragraph 7 of the law, it must first be convened at a “meeting”. Obviously, without a “meeting” the Board cannot take official action.
The judgment of the Court of Appeal is affirmed.
HAMITER, J., dissents with written reasons.

. During the pendency in the Court of Appeal, the action of Huckabay, the other complainant, abated as a result of his, death.

. Such vagueness renders it appropriate to refuse to consider the constitutional attacks. See opinion of the Oourt of Appeal, 72 So.2d at page 528 and authorities there cited.