ELLIS, Judge.
This suit was instituted by the Baton Rouge Firefighters’ Association, Local 557 AFL-CIO a voluntary unincorporated association, in an effort to obtain an injunction restraining Baton Rouge Municipal Fire and Police Civil Service Board and its members, individually, from enforcing an order issued by said defendants on September 6, 1963. A temporary restraining order was obtained by plaintiff. Upon the trial of the rule for a preliminary injunction, the case was heard in its entirety. It was submitted on the testimony of three union members and stipulations of fact submitted by opposing counsel. Plaintiff’s demands were rejected in the trial court and a devolutive appeal was perfected by plaintiff.
The stipulations are as follows:
“MR. AVANT: It is stipulated that for many years prior to July 10, 1963, which was the date of the official Fire Department election which the charges in this suit are concerned with, it was the unwritten custom of the Baton Rouge Firefighters Association, Local No. 557, to have a Union election to designate a Union member as the Union nominee for the office of member of the Baton Rouge Municipal Fire and Police Civil Service Board; that a similar custom existed within said Union with regard to the election of a representative from the Fire Department to the City-Parish Employees Retirement Board; that pursuant to this custom, the Union members would support the Union nominee in the official election for such offices and that no Union member would offer themselves as candidate for such offices in opposition to the Union nominee.
“It is further stipulated that when F. D. Sylvest was elected to the Baton Rouge Municipal Fire and Police Civil Service Board that he was a Union member, that he sought the Union nomination, he obtained the Union nomination in the Union election, and thus did receive the benefit of that custom in that no other Union member ran against him and he was elected to that office without opposition.
“It is further stipulated that when F. D. Sylvest offered himself as a candidate in the official Fire Department election of July 10, 1963, for Fire Department representative on the Baton Rouge Municipal Fire and Police Civil Service Board that that was the first time that any Union member had ever offered himself as a candidate in opposition to a Union nominee in an elections pertaining to the Fire Department.
“It is further stipulated that all parties to this litigation agree to maintain the status quo pending a final determination on the merits herein; that is to say, that the plaintiff Union and its members agree that no action of a disciplinary nature will be taken within the Union against F. D. Sylvest during the pend-ency of this litigation, nor will any effort be made to remove F. D. Sylvest from the Union during the pendency of this litigation because of his action in offering himself as a candidate in the election of July 10, 1963, in opposition to the Union nominee; that the defendants agree that the plaintiff Union may go about its business and conduct its regular and routine business, *484 or any special business that it may have in the ordinary and customary fashion during the pendency of this litigation, and that no charges will be made about that as long as the plaintiff lives up to this stipulation that no disciplinary action will be taken against F. D. Sylvest during the pendency of this suit because of his activity in offering himself as a candidate as aforesaid. '
“It is further agreed that in view of the above stipulation that the need for the temporary restraining order previously obtained herein by the plaintiffs is no longer in existence and that therefore the same, by consent, is recalled and set aside and it is further agreed that the hearing on the rule for preliminary injunction be continued from this date until one week from today, which will be October 21, 1963.
“MR. BARKER: We so stipulate.”
The ruling or the order of the Board complained of, in its entirety reads as follows:
“The Board has considered the problem before it at length. It has concluded that the policy followed by Local No. 557, insofar as it involves punitive action, is not reasonable or fair and that it does impede and hamper the free and full operation of the Civil Service System.
“It has discussed at length possible alternatives and has concluded to adopt a rule prescribing the method of election in both Departments, so as to standardize the procedure followed and so as to prevent the repetition of a situation the same as, or similar to, the one now under investigation.
“The Board has no desire to interfere with the internal affairs of Local No. 557; it feels, that Local No. 557 has, in the past, contributed greatly to the operation of the Fire Department and the Board wishes to cooperate with the Local for the benefit of the Civil Service System and of the membership of the Department.
“Pending the adoption of the rule referred to, however, the Board has the obligation of protecting the rights of individuals and after considering a number of alternatives, has reluctantly adopted the following order.
“It is ordered that all members of the Baton Rouge Fire Department immediately discontinue any pending disciplinary action against Captain F. D. Sylvest arising out of his recent candidacy for election to this Board; it is further ordered that no further action or punitive steps, whether formal or informal be taken against him and specifically that members of the Fire Department who are also members of Local No. 557,1.A.F.F., discontinue the pending disciplinary proceedings.”
The pertinent portion of the notice issued by the Grievance Committee and the Executive Board of the Union reads as follows:
“As you know, you allowed your name to appear on the Ballot for Civil Service Representative from the Baton Rouge Fire Department on July 10, 1963, in an election held at Central Fire Station.
“I am sure you are aware of the policy of Firefighters Local 557 to-have one nominee from the local. Anyone wishing to receive the endorsement of this local can come before the body and be considered. You had this opportunity, however, for some reason, you didn’t choose to come before this body to seek its endorsement.
“At the Regular Meeting of Local 557 on August 5, 1963, at Union Hall located at Seneca and Plank Road, there was a motion made and passed instructing this officer of Local 557 to write you a letter informing you that you have been charged with Misconduct in vio *485 lation of Article VIII, Sections 1 and 10 of the constitution and by-laws of the Local 557, I.A.F.F.-A.F.L.-C.I.O.
“Article VII, Section 2 sets up the Trial Board composed of members of the Grievance Committee and members of the Executive Board.
******
“You are hereby notified that a hearing before this committee will be held on August 29, 1963, 4:00 P.M. at 429 Government Street, in the office of Louisiana A.F.L.-C.I.O. to hear your reply to the above charge. This committee will then report same to Local 557 for action.”
After the Civil Service Board issued the above quoted order, the Union filed this suit, obtaining, at the outset, a temporary restraining order on October, 1963, restraining and prohibiting the Board and all members of the Board, individually, from carrying out the order of the Board dated September 6, 1963, which is set forth at length, supra. As stated above, the case was heard on its merits on the hearing of the rule for a preliminary injunction, which injunction was denied by the trial court for written reasons assigned.
The Civil Service Board is attempting to protect the alleged right of Mr. F. D. Sylvest to run in the official board election in contravention of the policies and customs of the union. It is undisputed that Mr. F. D. Sylvest has exercised his constitutional right to run. The Union did not prevent this. The Union does take the position, however, that since Mr. Sylvest ran in violation of the Union’s rules, the Union has the right to take punitive action against him.
It is not contended that Mr. Sylvest has a constitutional right to belong to the Union. But it is contended that Mr. Sylvest does have a constitutional right to run in the official Board election and that no one, union member or otherwise, has the prerogative to induce or attempt “to induce by threats of coercion” a civil service member to “waive any of his rights under the provisions of this Section, or of the rules” as prohibited by LSA-Constitution Article 14, § 15.1, sub-paragraph 30 a (12) of the Civil Service Law. The Union’s actions in taking punitive measures against Captain Sylvest is considered by the Board, to be in violation of this provision of the Civil Service Law.
In support of the procedure used by the Civil Service Board, Counsel for the Board relies, primarily, upon the following sections of the Civil Service Law which are quoted, in full, as follows:
“7. Duties of the Board.
* * * * * *
“c. Advise and assist the employees in the classified service with reference to the maintenance, improvement, and administration of personnel matters related to any individual or group of employees.
“d. Make, at the direction of the mayor, commissioner of public safety, chief of either the fire or police department, or upon the written petition of any citizen for just cause, or upon its own motion, any investigation concerning the administration of personnel or the compliance with the provisions of this Section in the said municipal fire and police services; review, and modify or set aside upon its own motion, any of its actions, take any other action which it determines to be desirable or necessary in the public interest, or to carry out effectively the provisions and purposes of this Section.
******
“8. Rules. Each board may adopt and execute rules, regulations, and orders necessary or desirable effectively to carry out the provisions of this Section, and shall do so when expressly required by this Section. No rule, regulation, or order shall be contrary to, *486 or in violation of, any provisions, purpose, or intent of this Section or contrary to any other provisions of law.
* * * >>
In order to properly consider the procedural aspects of this case, the basic substantive provisions of the Civil Service Law relied upon by the Board must also be considered:
“30. Corrective and Disciplinary Action for Maintaining Standards of Service.
“a. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
******
“(12) Inducing or attempting to induce by threats of coercion, any person holding a position in the classified service to resign his position, take a leave of absence from his duties, or waive any of his rights under the provisions of this Section, or of the rules.”
Also important is an analysis of the applicable provisions of the Civil Service Law in the case at Bar paragraph 30 c thereof:
“c. Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, the board may, and shall upon the written request of any qualified elector of the state which sets out the reasons therefor, make an investigation of the conduct and performance of any employee in the classified service and, thereupon may render such judgment and order action to be taken by the appointing authority. Such action shall be forthwith taken by the appointing authority.”
In the case of Oliver v. Shreveport Municipal Fire and Police Civil Service Board, 227 La. 1067, 81 So.2d 398, the same basic provisions of the Civil Service Law were at issue. These provisions were carefully analyzed in connection with strikingly similar board action. In that case the facts were briefly as follows:
“Plaintiffs, Oliver and Bussie, were and are members of the Shreveport Fire Department and governed by the classified civil service provisions of the Municipal Fire and Police Civil Service Law of Louisiana, now contained in the above-mentioned constitutional amendment. Neither had been disciplined by his appointing authority; such authority had never filed a complaint against either; and no written request for investigating or disciplining them had been made by any elector. The public hearings proposed to be held, and involving these employees, were instigated by the civil service board on its own motion.”
The Supreme Court, on rehearing, concluded that the Civil Service Board was not granted the power under the Louisiana Constitution to hold public hearings under the facts presented. Its reasoning was, in part, as follows:
“ * * * ‘It is defendant’s contention that the authority to conduct the proposed investigations can be supported by the unambiguous language of either the provisions of paragraphs 7d, 7e or paragraph 30c.’
******
“Significantly, not one of the quoted and relied on provisions uses the term ‘public investigation’ or ‘public hearing’ as do paragraphs 31 and 34. Paragraph 31, as pointed out above, relates to a situation whereby an employee has been disciplined by an appointing authority for some alleged misconduct, *487 described in paragraph 30 and inimical to a high standard of service, and he appeals to the board (after it and the employee have been furnished, in accordance with paragraph 30, subpar. d, a statement in writing of the appointing authority’s action and the complete reasons therefor), with the view and purpose of presenting evidence at a public hearing to show that the action was not taken in good faith for cause. Under paragraph 34 the board, within thirty days after receiving written charges respecting an employee’s engaging in certain specified and prohibited political activities, is required to hold ‘a public hearing and investigation and determine whether such charges are true and correct.’ In each of those instances, it is to be noted, the law contemplates a filing with the board of specific written charges against the employee; and, if and when such charges are so filed, it accords him the right to a public hearing in order to obtain redress if he can, including a clearing of his name from the resulting stigma. And the action of the board following the public hearing, if it rules against the employee, is conclusive except for a review by the courts.
“On the other hand the provisions relied on by the defendant board (as granting authority for the proposed hearings sought to be enjoined herein) neither provide for public hearings or public investigations nor require specific written charges as a basis for the action to be taken thereunder; they make reference simply to the board’s conducting or making investigations. And this, in the light of what has been stated above, indicates that only private investigations are contemplated by such provisions.
* * * * * *
“* * * Now if at a public hearing held initially the board finds an employee guilty of misconduct and requires the appointing authority to take disciplinary action, such employee (before he can obtain a judicial review) must appeal such action to the same board; and it must then hold another and an identical public hearing, on the same evidence previously considered, and there ‘review’ its own former ruling. That such a procedure would be grossly impractical and unreasonable is admitted by defense counsel. * * * ”
A careful reading of the provisions of paragraphs 7 d, 7 e and 30 c, cited in the Oliver case in connection with the additional provisions of paragraphs 7 c, 8 and 30 a (12) also relied upon by the Board herein, results in similar conclusions concerning the authority granted the Board to issue ex parte orders against groups of members directly.
The order in question was in the nature of a temporary restraining order, issued by a District Court but no date was set for a hearing.
In the case at bar, paragraph 30 c sets forth the required procedure by which the Civil Service Board may supplant the appointing authority in connection with violations of the prohibitions set forth in 30 a, one of which is 30 a (12) relied upon so heavily by the Board. The Board’s reliance upon this sub-paragraph is in error for the reason that the exact procedure for Board action to correct any violations of this and other sub-paragraphs under 30(a) are set forth fully in sub-paragraph 30(c), (which is quoted, in its entirety above). There is no contention made that any of the provisions of this portion of paragraph 30 of the Civil Service law were complied with in the issuance of the order under attack. Clearly, they were not. Logically, any violation of the prohibitions set forth in paragraph 30 which required initial Board action could and should be dealt with under the procedures provided in sub-paragraph 30 c, quoted supra.
*488 Furthermore, the argument of Counsel for the Board that the language of paragraph 7(d) giving the Board authority to “take any other action which it determines to be desirable or necessary in the public interest, or to carry out effectively the provisions and purposes of this Section” justify and provide for the action taken by the Board which is complained of in this suit is not persuasive in view of the conclusions reached in the Oliver case and the specific pertinent provisions of the Civil Service Law. Any action taken by the Board should be within the framework of the Civil Service Law and must, of necessity, be related to and in conformity with the procedures set forth in the distinct paragraphs thereof. The broad powers apparently granted by 7(d) must be read in pari materia with related provisions of the Civil Service Law. When this is done the procedural plan for the action sought to be effected in this case is revealed. Any initial orders, dealing with the disciplinary action in connection with violations of the provisions of paragraph 30 are directed to the appointing authority and said authority is compelled to take whatever action the Board directs.
If this had been done in the instant case, the Board, after making a private investigation upon the “written request” of a “qualified elector” could have ordered the appointing authority, which in this instance is the Baton Rouge Fire Department, to enjoin the alleged violation of paragraph 30 a (12), i. e. the pending punitive action against Captain Sylvest, by appropriate orders.
An appeal to the Board by those enjoined would then have been in order under the provisions of paragraph 31 of the Civil Service Law. The decision of the Board, on appeal, would then be the subject of judicial review.
Accordingly, it is found that the provisions of paragraph 7(d) authorizing the Board to “take any * * * action which it determines to be desirable or necessary” does not authorize the Civil Service Board to issue an order which is the equivalent of a temporary restraining order issued by a District Court, but without the time limits, restrictions and protections granted the individual restrained by such a Court order.
Similarly, any general references to orders given in paragraph 8 are necessarily qualified, in this instance, by the particular procedural provisions of paragraph 30. This result is indicated by the very language of paragraph 8 to the effect that “no * * * order shall be contrary to, or in violation of, any provisions of law * * * ” and further the “board may adopt * * * orders necessary or desirable effectively to carry out the provisions of this Section.” Clearly, the provisions of paragraph 8 authorizing the power to issue orders is controlled, in this instance, by the procedures required by paragraph 30 c.
For these reasons, it is found that the validity of the order, on the merits is not properly before this Court at this time. Therefore, this point will not be considered herein.
For the reasons assigned, the judgment of the District Court is reversed and judgment is granted herein in favor of the plaintiff, Baton Rouge Firefighters’ Association, Local 557, AFL-CIO, declaring the order issued by the Defendant, the Baton Rouge Municipal Fire and Police Service Board, to be null, void, and of no effect.
Reversed and rendered.