FORET, Judge.
The principal issues involved in this case are:
(1) The legality of the dismissal of the plaintiff, a tenured officer of the Opelousas Police Department;
(2) Whether he is estopped by his own laches from contesting the legality of his dismissal, and
(3) Assuming issues 1 and 2 being decided in his favor, the issue of his reinstatement with full pay retroactive to the date of the attempted illegal dismissal.
FACTS AND CHRONOLOGY
By letter dated and received August 28, 1972, from Earl Guidroz, Chief of Police of the Opelousas Police Department, defendant-appellant, Leroy J. Scrantz, a lieutenant with the Opelousas Police Department, was advised that he was being dismissed as of that date from the Opelousas Police Department. (Exhibit S 5, Tr., 479, 484; R. 20)
The Opelousas City Clerk was given a copy of the referred to letter of dismissal, and as a result thereof, he terminated the salary of defendant Scrantz as of August 28, 1972. (Tr., 420, 421)
At the time of the purported dismissal, Scrantz was forty-two (42) years old and had been a police officer since 1962. (Tr., 478)
On August 30, 1972, defendant Scrantz reported to work at his regularly scheduled shift, at which time he was again advised by the officer on duty that he was no longer a police officer and that they had his final check. (Tr., 485)
By letter dated September 6, 1972, defendant Scrantz appealed his attempted dismissal to the Opelousas Fire and Police Civil Service Board. (Tr., 485. R. 21)
Subsequent thereto, the Opelousas Fire and Police Civil Service Board passed a resolution pretermitting the holding of civil service hearings on disciplinary action taken against policemen, against whom criminal charges are pending until the final disposition of the criminal charges. (R. 22, 23)
Between September, 1972 and March 4, 1974, defendant Scrantz spoke to Clinton Beaugh, the police department representative on the Fire and Police Civil Service Board, on at least four (4) to five (5) occasions in an attempt to get the Board to give him a hearing. On these occasions he was told various things, including that the Board was “tied up” with other hearings; that it did not have a quorum because a member was sick, or that a member had resigned or died and had to be replaced, and on some of these occasions he was told by board member Beaugh that his desire for a hearing would be taken up at the Board’s meeting. (Tr., 487-490)
Lt. Scrantz consulted an attorney for the first time three to four days prior to March 4, 1974, and by letter dated March 4, 1974, addressed to the Fire and Police Civil Service Board, he again requested the Board to give him a hearing on his dismissal. (Tr., 493, R. 24)
Having received no reply from the Board to his letter of March 4, 1974, he retained an attorney in June, 1974, and by motion dated July 1, 1974, and filed with the Fire and Police Civil Service Board, defendant Scrantz sought his immediate reinstatement to the Opelousas Police Department on the basis that he was not afforded a hearing within thirty (30) days as required by Article 14, Section 15.1(31) of the Louisiana Constitution of 1921, and on the further basis that he was not dismissed by the Appointing Authority of the City of Opel-ousas as required by the Municipal Fire and Police Civil Service Law. (Tr., 494, R. 26-33)
*1382 The Opelousas Fire and Police Civil Service Board, at a meeting held by it on September 6, 1974, ordered the immediate reinstatement of defendant Scrantz on the basis that he was never discharged by the Governing Authority of the City of Opelou-sas as required by Article 14, Section 15.1 of the Louisiana Constitution of 1921. (R. 34, 35)
The City of Opelousas appealed this reinstatement order to the 27th Judicial District Court, and by decision dated March 19, 1975, that court reversed and remanded the matter to the Opelousas Fire and Police Civil Service Board on the grounds that the City of Opelousas had not been given notice of the meeting or hearing which considered and ordered the reinstatement of defendant Scrantz. (R. 4-19, 40, 41)
By letter dated March 26, 1975, the Fire and Police Civil Service Board fixed a hearing date on the Scrantz matter for April 12, 1975, and this hearing date was subsequently continued, over defendant’s objections.
At a meeting held on May 13, 1975, the Fire and Police Civil Service Board, by resolution, decided that when a hearing was held they would hear evidence relating to the merits of the charges contained in the letter of dismissal from the Chief and as to whether or not the charges justified dismissal of defendant Scrantz. (R. 47, 48, 49, 50, 51)
This decision was appealed by defendant Scrantz to the District Court on the grounds that Scrantz was entitled to a hearing on the legality of his dismissal, i. e. whether he was timely granted a hearing and whether his dismissal was initiated by the Governing Authority of the City of Opelousas as required by law. (R. 42-45)
By decision dated November 6, 1975, the district court held that defendant Scrantz was entitled to a hearing by the Board on the legality of his dismissal, and stated in part as follows:
“It is further the ruling of this court that pursuant to Article 14, Section 15.1(c) [15.1(30)(c)j of the Constitution the board may on its own motion or pursuant to notice or request by a qualified elector make an investigation and have a hearing upon the conduct or the performance of Mr. Scranta [sic] as its employee. Those two hearings must be held in the manner provided for under the law. If one is a private hearing and one is not then they shall be held that way. They should not be held simultaneously. I think, however, if one has to be a private hearing and the other a public hearing that they will have to be handled individually that way and not at the same time.” (emphasis supplied.) (R. 53,54)
A hearing was held before the Opelousas Fire and Police Civil Service Board on January 7, 1977, and on January 8, 1977.
At the beginning of the hearing the Fire and Police Civil Service Board instructed defendant that it would hear evidence relating to the legality of defendant’s dismissal as well as relating to the merits of the charges contained in .the letter of dismissal all together in a single public hearing, despite the vigorous objection of defendant and the previous decision of the district court dated November 6, 1975. Defendant requested that he be allowed to file writs of certiorari and mandamus with the courts and the Civil Service Board denied this request. The hearing then proceeded and was concluded in the objected to manner. (Tr., 7-20)
By decision dated January 17, 1977, the Opelousas Fire and Police Civil Service Board stated in part as follows:
“.The Board finds that the evidence is sufficient to establish that Lt. Scrantz was guilty of the violations of R.S. 33:2560A(1), (2) and (6) and that his dismissal from the Opelousas Police Department was for just cause. In view of the fact that the Board finds Lt. Scrantz guilty of violations which warrant his dismissal, the Board feels that Lt. Scrantz is estopped' by laches from taking advantage of fact that he was not legally dismissed. . . . ” (emphasis supplied) (R. 81-84)
Defendant Scrantz appealed the decision of the Fire and Police Civil Service Board to *1383 the 27th Judicial District Court. The district court affirmed the decision of the Fire and Police Civil Service Board and this matter is now on appeal before this Court. (R. 56, 102, 108, 105-108)
The parties herein raise no objection to the exercise of jurisdiction by this Court. The district court, however, was unsure of whether it sat as an appellate court or as a court of original jurisdiction in this matter. Therefore, at the outset, we note that this Court has appellate jurisdiction over this matter pursuant to Louisiana Constitution of 1974, Article V, Section 10(A). The issue of this Court’s jurisdiction in these cases is fully discussed in Touchette v. City of Rayne, Municipal Fire & Police Civil Service Board, 321 So.2d 62 (La.App. 3 Cir. 1975).
The scope of this Court’s review, however, is limited to questions of law. There is no jurisdiction to review the finding of facts by the Board, LSA Constitution 1921, Article 14, Section 15(0)(1). The question of whether there is any evidence to justify the Board’s conclusion is a question of law and is properly reviewable by this Court. A review of the record indicates some evidence to support the findings of fact by the Board. Although we may disagree with those findings, we may not substitute our conclusions for those of the Board. Brickman v. N.O. Aviation Board, 236 La. 143, 107 So.2d 422 (1958).
The controlling Civil Service law in this case, La. R.S. 33:2531 et seq., originated from Louisiana Constitution 1921, Article 14, Section 15.1. Accordingly, if there is any conflict, the Constitutional provision must control.
LEGALITY OF DISMISSAL
Only the appointing authority is given the authority to take corrective or disciplinary action against a police civil service employee. Dismissal or discipline by anyone else is illegal. La.Constitution 1921, Art. 14, Section 15.1, Para. 30, R.S. 33:401, 402; Chapman v. Bordelon, 242 La. 637, 138 So.2d 1 (1962). The appointing authority in the instant case is the Mayor and the Board of Aldermen.
The law provides two ways in which disciplinary action against an employee may be initiated. First, the appointing authority has the power to discipline an employee for one of several enumerated reasons: it must furnish the employee and the Civil Service Board a statement in writing of the action and the reason for which it is taken. Second, the Civil Service Board has the power in two situations, discussed infra, to make investigations and render judgment thereon. If this power is utilized, the Board may order the appointing authority to take certain action. These are the only methods by which an employee may be disciplined pursuant to the Civil Service law.
In the instant case, the appellant was dismissed by the Police Chief rather than the appointing authority as required; thus, there is no dispute that the attempted dismissal of the appellant was illegal. Both the Board and the district court recognized the illegality of the attempted dismissal. Given this conclusion, this Court must consider the appellant’s contention that the Board and the district court manifestly erred in ruling that he was barred by laches from asserting his claim.
APPLICABILITY OF LACHES
There is no statutory provision requiring a civil service employee to press a claim for reinstatement within a certain period. There is no fixed rule for determining what constitutes prompt action on the part of the employee to effectively assert his or her rights. Each case must depend upon its own peculiar facts. State Ex Rel. Pepper v. Sewerage and Water Board, 177 La. 740, 149 So. 441 (1933).
Triangle Oil Co. v. City of New Orleans, 5 So.2d 558 (Or.App.1942), at Page 561 said:
In Corpus Juris, Vol. 21, Section 211, at page 210, is found the following:
“Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. *1384 More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; * * * ; such delay in enforcing one’s rights as works disadvantage to another.”
In constituting a defense, the doctrine of lack of vigilance is based on, and in part resides in, the injury which might be occasioned, the injustice that might result from the enforcement of long neglected rights, the difficulty and in many instances the impossibility, of ascertaining the truth of matters in controversy and doing justice between the parties, and in part on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands. It is equally well recognized, however, that the doctrine cannot be invoked to defeat justice and will be applied only where the enforcement of the right asserted would work injustice.
There is no absolute rule as to what constitutes latches or staleness of demand, and each case must rest upon its own peculiar circumstances. It must be conceded that latches is not, like fixed periods of prescription, a mere matter of time. It resolves itself, rather, into principally a question of the inequity of permitting the claim to be enforced, an inequity which takes into consideration some intermediate change in conditions.
See also Shirey v. Campbell, 151 So.2d 557 (La.App. 2 Cir. 1963) 5 year lapse of time; Molero v. Bass, 322 So.2d 452 (La.App. 4 Cir. 1975) app. 22 year lapse of time; 30A C.J.S. Equity §§ 115-119.
The district court in the case sub judice relied upon the opinion of the Twenty-Seventh Judicial District Court, Judge Pavy presiding, in Stansbury v. City of Opelousas, which was affirmed by this Court at 341 So.2d 33 (La.App. 3 Cir. 1976) There are, however, important differences between these two cases.
In Stansbury, supra, the employee, also a policeman, was charged by affidavit, with theft, and plead guilty to a reduced charge on misdemeanor theft. He was sentenced to serve six months in prison. In contrast, the charges against the appellant were never brought to trial. Thus, unlike Stans-bury, the appellant would not have been prevented from performing duties of a law enforcement officer because of “serving time for an offense which was his duty as a law enforcer to deter”. 341 So.2d 33, 35.
The employee in Stainsbury was suspended after being charged with theft. He was dismissed only after entering a guilty plea to a lesser crime. The appellant herein was discharged before the charges were ever considered.
More closely related to the issue of laches is the contrasting conduct of the employees in the two cases. This Court agreed with the district court in Stansbury that the actions of appellant subsequent to his release from prison in seeking other employment and requesting return of pension funds to which he was entitled as a “former policeman”, indicated that the plaintiff had consciously abandoned his employment.
In stark contrast to Stansbury, the appellant herein has not sought other employment, nor has he requested the return of his pension fund. Furthermore, unlike Stans-bury, the appellant reported to work on the day regularly scheduled subsequent to his attempted discharge. Even with criminal charges against him apparently pending, he spoke with the police department representative and the Civil Service Board on at least four occasions between his timely appeal of the discharge in September of 1972 and his pressing of the matter by letter on March 4, 1974. On each of these calls he was led to believe that the Board was unable to hear the matter at the time due to internal problems such as inability to have a quorum at meetings. In conclusion, we hold that Stansbury is distinguishable from the instant case.
• For several reasons we find that the appellant had reasonable cause to believe that pursuit of his appeal other than his *1385 actual inquiries would have been untimely prior to the time of his motion filed with the Board on- July 1, 1974.
First, the appellant was lulled into a sense of security by the responses of the Board member to his repeated inquiries about his appeal. Thus, the doctrine of laches is inapplicable on this basis as noted in dicta in Fields v. Rapides Parish School Board, 231 La. 914, 93 So.2d 214 (1957).
Second, the Civil Service Board had pre-termitted the holding of Civil Service hearings of appeals taken by policemen against whom criminal charges were pending until the final disposition of the criminal charges (R., pgs. 22, 23). The effect of this action was to render useless any further action by the appellant vis-a-vis the Civil Service Board until the final disposition of the charges against him. His knowledge or lack of knowledge, of the action by the Board is of no consequence.
Furthermore, the pendency of criminal charges against the appellant, notwithstanding the Board’s pretermission, is additional reason for the inapplicability of the doctrine of laches. Hermann v. N.O. Police Dept., on rehearing, 238 La. 81, 113 So.2d 612, 619 (1959); City of New Orleans v. Jackson, 224 La. 771, 70 So.2d 679 (1953).
Finally, we note that in Devillier v. City of Opelousas, 247 So.2d 412 (La.App. 3 Cir. 1971), we held that the plaintiffs were not barred by laches from recovery of back wages which occurred within one year of the filing of suit. There was no pursuit of the claim in the interim. In the instant case, eighteen months elapsed between timely filing of an appeal and the letter to the Board requesting the consideration of the appeal. The appellant, however, made inquiries in the interim. Under the circumstances, we are of the opinion that the period of time in the instant case is as reasonable as one year in Devillier, supra, even recognizing the inherent differences in a claim for back wages and a claim for reinstatement.
In summary, we conclude that the totality of the above factors renders the doctrine of laches inapplicable in the instant case, and that the district court was manifestly erroneous in concluding otherwise.
LEGALITY OF BOARD’S DECISION ON REINSTATEMENT
The appellant also questions the legality of the Civil Service Board’s hearing of January 7 and 8, 1977. At this public hearing the Board considered the legality of the appellant’s dismissal and the merits of the charges contained in the letter of dismissal. The appellant objected on the grounds that the Board was required to hold a private hearing on the merits of the charges against him.
The hearing of the merits of the charges against the appellant was pursuant to the Board’s own motion, as no written request of a qualified elector was filed with the Board. In such a case, the Board must hold a private hearing and investigation. Oliver v. Shreveport Municipal Fire and Police Civil Service Board, 227 La. 1067, 81 So.2d 398 (1954). Baton Rouge Fire Fighters Ass’n v. Fire & Police Civil Service Board, 167 So.2d 482 (La.App. 1 Cir. 1964). The district court recognized this in its decision dated November 6, 1975 (Record, Pg. 53, 54). The legal counsel for the Civil Service Board also recognized this (Rec., Pg. 90). Thus, the Board was in error in investigating and hearing the merits of the charges at a public hearing.
When the Board makes an investigation on its own motion, it may order the appointing authority to take certain action, but it has no authority to act directly vis-a-vis the employee. There was no such order in the instant case. The Board’s determination of the merits of the charges, even if legal, has no effect until such an order is made.
Furthermore, the Board is limited to two holdings in deciding an appeal of an employee pursuant to Article 14, Sec. 15.1, Para. 31. The Board may (1) affirm the action of the appointing authority or (2) order the re-employment of the employee. In the instant case, there was no action by *1386 the appointing authority. Thus, the Board was without authority to affirm the attempted dismissal of the appellant.
For the above reasons, we conclude that the judgment of the Civil Service Board, dated January 17,1977, is null. The district court’s affirmance was manifestly erroneous.
Until there is a lawful dismissal for cause, a civil servant is legally entitled to recognition of his status as such with corresponding rights to the economic benefits flowing from such employment. State v. Heard, 228 La. 1078, 84 So.2d 827 (1955). Thus, the appellant is entitled to reinstatement and full compensation from the date of his attempted dismissal.
The judgment of the district court is reversed, and judgment is hereby rendered in favor of Leroy J. Scrantz and against the City of Opelousas, ordering the City of Opelousas to reinstate Scrantz to his rank and status as of August 28, 1972, with full pay and emoluments of his office retroactive to that date.
Costs of this appeal, as well as those in the trial court, are assessed against the City of Opelousas, insofar as the City is liable for costs under R.S. 13:4521.
REVERSED AND RENDERED.